384 F.3d 1105
 KRL, a California general partnership; Roland Womack; Nadine Womack; Larry Dwight Womack; Luke Womack; Renee Womack, Plaintiffs-Appellees,
v.
Russell MOORE; David J. Irey; Amador County; State of California, Defendants, and
Todd D. Riebe; Ron Hall, Defendants-Appellants.
KRL, a California general partnership; Roland Womack; Nadine Womack; Larry Dwight Womack; Luke Womack; Renee Womack, Plaintiffs-Appellees,
v.
Russell Moore; Todd D. Riebe; Ron Hall; Amador County; State of California, Defendants, and
David J. Irey, Defendant-Appellant.
 No. 02-15296.
 No. 02-15297.
 United States Court of Appeals, Ninth Circuit.
 Argued March 13, 2003.
 Submitted September 27, 2004.
 Filed September 27, 2004.
 
 COPYRIGHT MATERIAL OMITTED David S. Womack, Johnson Schacther & Collins, Sacramento, CA, for defendants-appellants Riebe and Hall; William S. Scott, Scott, Nichols & Matteucci, Stockton, CA, for defendant-appellant Irey.
 Steven E. Moyer, Rein Evans & Sestanovich, Los Angeles, CA, for plaintiffs-appellees KRL, et al.
 Appeal from the United States District Court for the Eastern District of California, David F. Levi, District Judge, Presiding. D.C. No. CV-99-02437-DFL(DAD).
 Before: GOODWIN, TASHIMA, and WARDLAW, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Defendants Todd Riebe, Ron Hall and David Irey appeal the district court's denial of summary judgment, contending that they are entitled to immunity from the action brought by KRL, a California general partnership, and several members of the Womack family (together with KRL, "Plaintiffs").
 
 BACKGROUND
 
 2
 In April 1998, KRL purchased a defunct gasoline station in Jackson, California, in order to convert the real property into a parking lot. Robert Womack ("Womack") oversaw the removal of an underground gasoline storage tank. Upon learning of the removal of the storage tank, Amador County officials expressed concern about environmental contamination and referred the matter to the Amador County District Attorney's office (the "D.A.'s office"), which began a criminal investigation in June 1998.
 
 
 3
 The investigation was conducted by Hall, an investigator employed by the D.A.'s office, and Irey, a San Joaquin County Deputy District Attorney who was specially appointed to conduct the investigation in Amador County, assisted by Russell Moore, a California Highway Patrol Officer. Hall and Irey located the removed storage tank and obtained a copy of a check, drawn from a KRL bank account, used to pay for the disposal of the storage tank. The address on the check was 15864 Ridge Road, Sutter Creek, California, a KRL property and Womack's home address (the "Ridge Road Property").
 
 
 4
 On October 30, 1998, a search of the Ridge Road Property was conducted pursuant to a warrant supported by an affidavit given by Moore. On December 1, 1998, a grand jury indicted Womack and others on twenty-one counts, most of which concerned the storage tank removal and actions related to its disposal. Womack was also indicted for fraud in connection with the use of a contractor's license number, and perjury relating to DMV records.
 
 
 5
 On January 11, 1999, Moore submitted another affidavit in support of a search warrant (the "second search warrant") to search the Ridge Road Property. The affidavit sought to gather evidence for the prosecution of Womack. But it also stated that "we have now additionally embarked on the early stages of tracking unreported income and the monies of the WOMACK'S [sic] via their various questionable transfers of personal and real property and the tax implications of those activities." Irey reviewed the affidavit prior to submission, as did Riebe, who that day was sworn in as the Amador County District Attorney.
 
 
 6
 The warrant authorized the seizure of a broad range of documents created since January 1, 1995, and was executed by Moore, Hall, and others beginning on January 11, 1999. After finding evidence not within the scope of the warrant, Moore interrupted the search and returned to court with Irey to obtain an extended warrant authorizing seizure of documents dating back to 1990. Plaintiffs allege that officers then seized documents dating as far back as 1977.
 
 
 7
 On January 21, 1999, Moore submitted an affidavit in support of a search warrant (the "third search warrant") to search for buried vehicles and other hazardous waste and to obtain soil samples at 17650 Bosse Road in Jackson, California, which was owned by KRL and home to Luke and Renee Womack (the "Bosse Road Property"). The affidavit was partly based on accusations made by John Malmquist, the stepson of the former owner of the Bosse Road Property. Both Riebe and Irey reviewed the affidavit. On January 26, Moore and other officers executed the search. Irey was present for part of the search, but the extent of his participation is disputed.
 
 
 8
 In September 2000, the D.A.'s office transferred Womack's criminal prosecution to the California Attorney General's office, which dropped all charges. No charges were ever filed against Plaintiffs.[1]
 
 
 9
 On December 10, 1999, Plaintiffs filed this 42 U.S.C. § 1983 action, claiming several constitutional violations in connection with all three searches. Defendants moved for summary judgment, seeking absolute or qualified immunity. On January 17, 2002, the district court denied defendants' motion for immunity on the following claims: (1) Hall's alleged overbroad execution of the second search warrant; (2) reliance by Riebe, Hall, and Irey on a facially invalid search warrant for the search of the Ridge Road Property; (3) Irey's alleged overbroad execution of the January 26 search of the Bosse Road Property; and (4) the alleged judicial deception by Riebe, Hall, and Irey in not disclosing Malmquist's dubious credibility in the affidavit in support of the third search warrant.
 
 
 10
 Defendants filed an interlocutory appeal from the district court's order denying summary judgment. After oral argument, we deferred submission pending Supreme Court review of two cases from our circuit relied upon by the parties: Bishop Paiute Tribe v. County of Inyo, 291 F.3d 549 (9th Cir.2002) (as amended), vacated by Inyo County v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, 538 U.S. 701, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003), and Ramirez v. Butte-Silver Bow County, 298 F.3d 1022 (9th Cir.2002), aff'd, Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).
 
 JURISDICTION
 
 11
 An interlocutory appeal may be taken from the denial of immunity if the denial presents a question of law. Behrens v. Pelletier, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). "Where disputed facts exist, however, we can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct." Jeffers v. Gomez, 267 F.3d 895, 903 (9th Cir.2001) (as amended).
 
 
 12
 We have jurisdiction to consider whether absolute or qualified immunity shields Riebe, Irey, and Hall from liability for their involvement with the January search warrants. The issues of fact identified by the district court do not thwart our review of whether Hall is entitled to qualified immunity for his reliance on, and execution of, the second search warrant. See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If as alleged, Hall was the "lead officer" and seized documents predating 1990, we have jurisdiction to decide whether that conduct violated a constitutional right and, if so, whether Hall acted reasonably. Id. at 200, 121 S.Ct. 2151.
 
 
 13
 We also have jurisdiction to review the district court's denial of summary judgment on the claim of judicial deception. As discussed infra, the third search warrant related to a collateral investigation to which absolute prosecutorial immunity does not apply. Because the application of qualified immunity to Plaintiffs' allegations is a question of law, we have jurisdiction to consider whether Riebe and Hall are entitled to qualified immunity.
 
 DISCUSSION
 
 14
 We no longer construe the allegations in the complaint as true when deciding whether a motion for summary judgment based on official immunity was properly decided. See Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir.2004). Instead, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." Id. We nevertheless construe all reasonable inferences in favor of the non-moving party, as we do when reviewing other motions for summary judgment. Eastman Kodak Co. v. Image Technical Serv., Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).
 
 A. Absolute Immunity
 
 15
 Defendants argue that they are entitled to absolute prosecutorial immunity because they were acting pursuant to the preparation of a prosecutor's case. We review de novo a district court's decision to deny absolute immunity. Fletcher v. Kalina, 93 F.3d 653, 654 (9th Cir.1996), aff'd, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). The party asserting immunity bears the burden to show that such protection is justified. See Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). We presume that qualified rather than absolute immunity sufficiently protects government officials in the exercise of their duties. Id. at 486-87, 111 S.Ct. 1934.
 
 1. When prosecuting an indictment
 
 16
 A prosecutor is entitled to absolute immunity from a civil action for damages when he or she performs a function that is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). A prosecutor's functions that are protected by absolute immunity include initiating a prosecution and presenting the State's case, id. at 431, 96 S.Ct. 984, appearing at a probable cause hearing to support an application for a search warrant, Burns, 500 U.S. at 492, 111 S.Ct. 1934, and preparing and filing an arrest warrant. Kalina v. Fletcher, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). However, the functions of an advocate do not include advising police officers whether probable cause exists during their pretrial investigation, Burns, 500 U.S. at 493, 111 S.Ct. 1934, fabricating evidence before probable cause has been established, Buckley v. Fitzsimmons, 509 U.S. 259, 275, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), or attesting to the facts that support an arrest warrant. Kalina, 522 U.S. at 130-31, 118 S.Ct. 502.
 
 
 17
 The Supreme Court has not addressed whether a prosecutor is entitled to absolute immunity when assisting with the acquisition of evidence pursuant to a post-indictment search warrant. We have concluded, however, that "[p]rosecutors are absolutely immune from liability for gathering additional evidence after probable cause is established or criminal proceedings have begun when they are performing a quasi-judicial function." Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir.2003). The existence of probable cause at the time of the prosecutor's alleged unconstitutional conduct must be considered because "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Buckley, 509 U.S. at 274, 113 S.Ct. 2606 (footnote omitted). However, a prosecutor can still perform "police investigative work" after probable cause has been established, for which only qualified immunity would apply. Id. at 274 n. 5, 113 S.Ct. 2606; see also Imbler, 424 U.S. at 431 n. 33, 96 S.Ct. 984; Broam, 320 F.3d at 1031. Thus, the timing of the prosecutor's conduct informs our determination of the function performed, but it is not determinative. See Cousin v. Small, 325 F.3d 627, 636 (5th Cir.2003) ("What Cousin fails to acknowledge, however, is that the timing of events, while not determinative, can be highly relevant to the inquiry into function." (footnote omitted)).
 
 
 18
 Here, the second search warrant had two goals: it sought evidence to prosecute the pending indictment against Womack, and it sought to investigate and uncover new crimes.[2] The third paragraph of the affidavit submitted with the search warrant stated these dual aims: "In order to gather evidence as to the crimes[ ] which Robert WOMACK was indicted on and to help determine the entire scope of these business activities that are permeated with fraud we need to determine several additional things." Regarding the pending indictment, the affidavit disclosed that Womack may have paid for the disposal of the storage tank with a check drawn on a KRL account, that the Ridge Road Property was both KRL's office and Womack's residence, and that telephone records were needed to substantiate the charges that Womack attempted to dissuade witnesses from testifying truthfully.
 
 
 19
 We conclude that, to the extent the second search warrant sought evidence to prosecute the crimes charged in the indictment, Riebe's and Irey's review of the warrant prior to submission was intimately associated with the judicial process. Probable cause had been established by the grand jury, and the prosecutors' actions were directed at the upcoming trial. Cf. Genzler v. Longanbach, ___ F.3d ___, ___, No. 02-56572, slip op. at 14034 (9th Cir. September 27, 2004) (concluding prosecutor "actively directing investigative, police-like actions" before preliminary hearing not entitled to absolute immunity). Ensuring that evidence recovered pursuant to a post-indictment search warrant will be admissible at trial is no less the function of an advocate than deciding what evidence will be presented at trial. See Imbler, 424 U.S. at 431 n. 33, 96 S.Ct. 984 ("Preparation ... for a trial [ ] may require the obtaining, reviewing, and evaluating of evidence."); see also Broam, 320 F.3d at 1033 ("He is absolutely immune from liability for damages if he was gathering evidence to present to the trier of fact."). Our conclusion is bolstered by the availability of the "crucible of the judicial process" to check a prosecutor's overly-aggressive pursuit of evidence for trial. Burns, 500 U.S. at 496, 111 S.Ct. 1934 (quotation marks and citation omitted); see also Mitchell v. Forsyth, 472 U.S. 511, 522-23, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("[T]he judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damages actions to prevent unjust results.").
 
 
 20
 Neither Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), nor Burns leads us to a different conclusion. In Malley, the court rejected the analogy between an officer seeking an arrest warrant and a prosecutor seeking an indictment because applying for a warrant "is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." 475 U.S. at 342-43, 106 S.Ct. 1092. The Court explained that "seeking an indictment is but the first step in the process of seeking a conviction." Id. at 343, 106 S.Ct. 1092. Where a prosecutor has secured an indictment and begins to marshal evidence for trial, i.e., undertakes the second or third step in the process of obtaining a conviction, Malley implies that exposing a prosecutor to liability for his or her decisions at that later stage has a greater likelihood of interfering with the prosecutor's independent judgment. Id.
 
 
 21
 In Burns, the Court ruled that a prosecutor is not entitled to absolute immunity when providing legal advice to police officers "in the investigative phase of a criminal case." 500 U.S. at 493, 111 S.Ct. 1934. Regarding the government's argument that a prosecutor's functions include screening cases for prosecution, the Court stated: "Indeed, we implicitly rejected the United States' argument in Mitchell... where we held that the Attorney General was not absolutely immune from liability for authorizing a warrantless wiretap. Even though the wiretap was arguably related to a potential prosecution, we found that the Attorney General `was not acting in a prosecutorial capacity' and thus was not entitled to the immunity recognized in Imbler." Id. at 495-96, 111 S.Ct. 1934 (quoting Mitchell, 472 U.S. at 521, 105 S.Ct. 2806).
 
 
 22
 Unlike in Burns, the prosecutors here did not serve as free-standing legal advisors to police officers. Rather, because probable cause had been established, and because an indictment had issued against Womack, they were performing a traditional function of an advocate for the State, namely, overseeing trial preparations. Cf. Kalina, 522 U.S. at 129-30, 118 S.Ct. 502 (stating that attorney's "determination that the evidence was sufficiently strong to justify a probable-cause finding" and "selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause" required the professional judgment of an advocate); see also Buckley, 509 U.S. at 285, 113 S.Ct. 2606 (Kennedy, J., concurring in part, dissenting in part) ("The premise of Burns was that, in providing advice to the police, the prosecutor acted to guide police, not to prepare his own case.").
 
 
 23
 Hall is also entitled to absolute immunity for his reliance on the second search warrant to gather evidence for the prosecution of Womack. Investigative activities carried out in preparation for a prosecutor's case may enjoy absolute immunity. See Broam, 320 F.3d at 1031. As the Court stated in Buckley, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." 509 U.S. at 273, 113 S.Ct. 2606. Because we focus on "the nature of the function performed, not the identity of the actor who performed it," Forrester v. White, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), an investigator gathering evidence, a month after an indictment was filed, to prepare the prosecutor for trial is engaged in an advocacy function intimately associated with the judicial process, and is entitled to the same immunity that would be afforded a prosecutor. Cf. Buckley, 509 U.S. at 273, 113 S.Ct. 2606; see also Broam, 320 F.3d at 1033 (stating investigator may be protected by absolute immunity where activities were quasi-judicial in nature); Pachaly v. City of Lynchburg, 897 F.2d 723, 728 (4th Cir.1990) (prosecutor's participation in execution of a post-indictment search warrant protected by absolute immunity).
 
 
 24
 2. When assisting with a collateral investigation
 
 
 25
 Plaintiffs argue, however, that the second search warrant went beyond gathering evidence for the prosecution of Womack. We agree.
 
 
 26
 The affidavit states that information provided by grand jury witnesses "led to an expanding of our investigation beyond the original [hazardous waste] type of violations," and the D.A.'s office has "embarked on the early stages of tracking unreported incomes and ... questionable transfers of personal and real property and the tax implications of those activities." Expressing an opinion, the affidavit alleged that Womack's business activities "appear to be permeated with fraud" and show "a pattern of white-collar crime." Specific allegations, apparently to bolster that opinion, were that (1) Womack, in part with a check drawn on a KRL account, purchased a Lincoln Navigator from an Oregon dealership to avoid paying California sales tax; (2) Womack diverted funds from KRL for personal expenses and to hide assets; and (3) Womack had buried hazardous waste on the Bosse Road Property owned by KRL.
 
 
 27
 The collateral investigation into whether KRL is permeated with fraud went beyond any legitimate preparation to prosecute Womack for any crime in the removal of the storage tank or for the other crimes charged in the indictment. Like advising officers about the existence of probable cause during the pretrial investigation, see Burns, 500 U.S. at 493, 111 S.Ct. 1934, approving a search warrant to assist with a collateral investigation into new crimes is an investigative function that is not entitled to absolute immunity. See Buckley, 509 U.S. at 290, 113 S.Ct. 2606 (Kennedy, J., concurring in part, dissenting in part) ("[E]ven after there is probable cause to arrest a suspect or after a suspect is indicted, a prosecutor might act to further police investigative work, say by finding new leads, in which case only qualified immunity should apply."); see also Herb Hallman Chevrolet, Inc. v. Nash-Holmes, 169 F.3d 636, 642 (9th Cir.1999) ("A prosecutor may only shield his investigative work with qualified immunity."). To hold otherwise would render superfluous the caveat discussed in Buckley that a finding of probable cause does not insulate all subsequent actions by a prosecutor.
 
 
 28
 We must emphasize that our result would not necessarily be the same had the prosecutors reviewed an arrest warrant, rather than a search warrant, prior to submission. As noted supra, the Court has stated that a prosecutor does not serve as an advocate before probable cause to arrest anyone has been established, Buckley, 509 U.S. at 274, 113 S.Ct. 2606, but that the determination of whether probable cause exists to file charging documents is the function of an advocate, Kalina, 522 U.S. at 129-30, 118 S.Ct. 502. See also Spivey v. Robertson, 197 F.3d 772, 776 (5th Cir.1999) (recognizing that under Kalina,"a prosecutor acts as an advocate in supplying legal advice to support an affidavit for an arrest warrant and is entitled to absolute immunity"). Here, because probable cause had not been established to prosecute anyone for conduct relating to the collateral investigation, the prosecutors did not serve as advocates in reviewing and approving the investigatory search warrant. See Burns, 500 U.S. at 504, 111 S.Ct. 1934 (Scalia, J., concurring in part, dissenting in part) ("I think it entirely plain that, in 1871 when § 1983 was enacted, there was no absolute immunity for procuring a search warrant.").
 
 
 29
 Our recent decision in Genzler supports this conclusion. There, a prosecutor and an investigator interviewed a witness to "continu[e] the process of investigation into the facts that would inform whether there was ... probable cause, and the precise charges on which [the suspect] would stand trial had yet to be determined." Genzler, 384 F.3d at 1092, No. 02-56572, slip op. at 14035. The investigator was "engaged in the process of `acquiring' or manufacturing evidence during the performance of an investigative function," and the prosecutor was "actively directing investigative, police-like actions." Id. at 1101, slip op. at 14033, 10434. We therefore concluded that neither one had performed a quasi-judicial function and affirmed the district court's denial of absolute immunity. Id. at 1105, slip op. at 14040. Similarly, here, in conducting the collateral investigation, defendants were "engage[d] in behavior typically associated with police work [such as] pursuing leads, exploratory fact gathering, and searching for evidence," id. at 1099, slip op. at 14029, that was not quasi-judicial in nature and is not protected by absolute immunity.
 
 
 30
 Defendants also contend that they are entitled to absolute immunity from Plaintiffs' claim of injury caused by judicial deception. The affidavit in support of the third search warrant states that environmental crimes had occurred or were occurring at the Bosse Road Property. The record contains evidence that all three defendants believed the third search warrant was issued to investigate crimes apart from those charged in the indictment. When speaking on a radio program in March 1999, Irey was asked how the search warrant for the Bosse Road Property related to the storage tank's disposal. He answered: "I don't think it really does. It's pretty much a stand-alone investigation." Likewise, when asked essentially the same question during a subsequent interview, Riebe explained: "This is a stand-alone investigation.... It's a continuing investigation." Finally, Hall testified during his deposition that he did not believe that the search of the Bosse Road Property was related to the investigation of the storage tank removal. Thus, we conclude that, because the warrant executed on the Bosse Road Property was to further a "standalone investigation" into environmental crimes, Riebe and Irey are not entitled to absolute immunity from Plaintiffs' claim of judicial deception.
 
 B. Qualified Immunity
 
 31
 In the event they did not have absolute immunity, Riebe and Hall argue that they are entitled to qualified immunity.[3] Riebe contends that his mere review of the warrants does not violate a constitutional right and, in any event, that a reasonable officer could have approved the warrants. Hall asserts that he did not prepare the second search warrant or act as the lead officer during its execution, and that he did not prepare or execute the third search warrant.
 
 1. For the second search warrant
 
 32
 In Saucier, the Supreme Court outlined the following sequence for the qualified immunity analysis. First,"[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201, 121 S.Ct. 2151. If yes, "the next, sequential step is to ask whether the right was clearly established." Id.
 
 
 33
 The Court explained that in undertaking this second step, the "relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151.
 
 
 34
 "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988 n. 5, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In United States v. Offices Known as 50 State Distributing Co., 708 F.2d 1371 (9th Cir.1983), we held that a broad search is permitted under the Fourth Amendment where there is probable cause to believe that a business is permeated with fraud. 708 F.2d at 1374. To come within the exception, the government must provide probable cause that "the entire business is merely a scheme to defraud or that all of the business's records are likely to evidence criminal activity." United States v. Kow, 58 F.3d 423, 427 (9th Cir.1995). Allegations that a business has routinely engaged in fraudulent practices are insufficient; an affidavit must provide probable cause that the majority of the business operations are fraudulent. In re Grand Jury Investigation Concerning Solid State Devices, Inc., 130 F.3d 853, 856 (9th Cir.1997) ("In re Grand Jury").
 
 
 35
 The district court correctly concluded that Moore's affidavit does not establish probable cause to seize KRL documents over a ten-year period. In addition to the vague allegations of tax evasion and KRL's involvement with the storage tank removal, the affidavit alleged that (1) a complaint for fraud was filed against KRL in 1991; (2) Womack and his son may have committed perjury in 1992 by denying Womack's control over KRL; (3) Womack-controlled businesses may have violated "zoning, planning, and/or environmental laws" from 1994 to 1997; and (4) KRL's funds were used to purchase the Lincoln Navigator from an Oregon dealership. After the search began, the warrant was expanded to include all records dating to 1990 based on Moore's discovery of a 1990 ledger and a number of checks that Moore believed may have been used to divert funds from KRL to Womack. These allegations do not amount to a business "permeated with fraud" from 1990 to 1999. See Kow, 58 F.3d at 427-28; see also In re Grand Jury, 130 F.3d at 856.
 
 
 36
 Riebe's argument that his role in reviewing the warrants could not give rise to a constitutional violation is unconvincing. He does not dispute that he assured himself that the information in the second search warrants was accurate, suggested that its scope be narrowed, and approved and authorized the submission of both warrants to the court. Though perhaps his participation may have been minimal, viewing the evidence in the light most favorable to Plaintiffs, his approval of the invalid warrant led directly to the search that violated Plaintiffs' Fourth Amendment rights. Cf. Mitchell, 472 U.S. at 535, 105 S.Ct. 2806 (stating that Attorney General's authorization of warrantless wiretap violated the Fourth Amendment).
 
 
 37
 We next turn to whether Riebe and Hall acted reasonably under the circumstances. Riebe asserts that the reasonableness inquiry should be "whether, given the circumstances confronting [him], on his first day in office, another officer `could' have believed Moore's affidavits supported the warrants." A state official's conduct is not made more reasonable because the official is less experienced at making the decisions required by the position. If Riebe means to argue that a lower standard for reasonableness is necessary because he was pressed into service on his first day in office, no evidence in the record suggests that the Amador County District Attorney is obligated to review search warrants. Indeed, Riebe's opening brief verifies that he could have declined to review the warrants; he states that he "could have, without risk, simply walked away from the warrants ... saying something like `I'm too new, you handle it.'" His decision to review the warrants, no matter how well-intentioned, does not subject his actions to a lower standard of reasonableness.
 
 
 38
 "Qualified immunity protects `all but the plainly incompetent or those who knowingly violate the law.'" Lee v. Gregory, 363 F.3d 931, 934 (9th Cir.2004) (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court stated that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according `great deference' to a magistrate's determination." 468 U.S. at 914, 104 S.Ct. 3430 (citation omitted). Still, "a warrant may be so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid." Id. at 923, 104 S.Ct. 3430.
 
 
 39
 Riebe approved the second search warrant on January 4, 1999, when it was limited to 1995. At that time, although the warrant still lacked probable cause, it had a more reasonable temporal limit, cf. Kow, 58 F.3d at 427; it alleged fraudulent activity and tax evasion dating to 1997; it alleged hazardous waste violations in 1995 and 1996 at the Bosse Road Property, as well as with the storage tank, cf. United States v. Stubbs, 873 F.2d 210, 212 (9th Cir.1989) (no reference to criminal activity); and it alleged that Womack withdrew funds from KRL for personal expenses and illegal activities. We conclude that the warrant, as it stood on January 4, was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley, 475 U.S. at 345, 106 S.Ct. 1092. Riebe's approval of the second search warrant was reasonable, and, to the extent it was investigative rather than prosecutorial, he is entitled to qualified immunity.
 
 
 40
 The district court properly denied qualified immunity to Hall on Plaintiffs' claim that he unreasonably relied on the search warrant and that he seized documents predating 1990 during the January 13 search. Assuming he was the lead investigator, Hall would have greater responsibility for ensuring that the warrant was not defective. See Ramirez, 298 F.3d at 1028 (distinguishing reasonableness of line officer's conduct from lead officer's conduct). Even if probable cause existed to believe KRL was "permeated with fraud" since 1995, no reasonable officer could conclude that the discovery of a 1990 ledger and several checks showed that KRL had been primarily engaged in fraudulent activity since 1990. See Kow, 58 F.3d at 430. The fact that a judge and a prosecutor had approved the warrant does not make Hall's reliance on it reasonable. Id. at 429.
 
 
 41
 Regarding the claim of overbroad execution, the law is clearly established that a search may not exceed the scope of the search warrant, and the warrant here was limited to documents created after 1990. See Horton v. California, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Thus, Hall is not entitled to qualified immunity on Plaintiffs' claim that he seized documents predating 1990.
 
 2. For the third search warrant
 
 42
 The district court denied summary judgment on the claim of judicial deception, finding that Plaintiffs did not have an opportunity to develop this claim because Moore had been unavailable for deposition. The district court should have engaged in a qualified immunity analysis with respect to this claim because it could have been resolved as a matter of law.
 
 
 43
 It is clearly established that judicial deception may not be employed to obtain a search warrant. Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir.2002). The court determines the materiality of alleged false statements or omissions. Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir.2002).
 
 
 44
 In their complaint, Plaintiffs alleged that the following information was material but omitted from the affidavit in support of the third search warrant: (1) Malmquist's criminal history, illegal activities on the Bosse Road Property, and grudge against the Womack family; (2) the fact that one supposed eyewitness (Brackett) did not corroborate Malmquist's statements; and (3) the fact that a complaint filed by Malmquist in 1995 regarding buried waste was investigated and none was found. The affidavit did reveal, however, that the 1995 investigation uncovered no hazardous waste on the Bosse Road Property. It also stated that one eyewitness Malmquist identified did not corroborate his story. Finally, the affidavit disclosed the fact that John Malmquist and his mother were forced to move from the Bosse Road Property, that his belongings were buried on the property before he had a chance to move them himself, and that he blames Womack for his mother's death. Therefore, the only issue remaining is whether Malmquist's dubious reliability would have undermined the finding of probable cause.
 
 
 45
 Taking the facts in the light most favorable to Plaintiffs, the omission did not affect the finding of probable cause to support the search warrant. A reasonable official, with knowledge of his background, may have questioned Malmquist's reliability. But Moore's affidavit indicates that he and Hall investigated and corroborated many of Malmquist's statements regarding the alleged dumping at the Bosse Road Property with an eyewitness (Baldridge), whose reliability is not challenged by Plaintiffs. Therefore, Riebe was entitled to qualified immunity on this claim. Hall is also entitled to qualified immunity because he had no role in the preparation of the third search warrant or its execution. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (holding that no § 1983 liability exists absent personal participation).
 
 CONCLUSION
 
 46
 We reverse the denial of absolute immunity to the extent that defendants used the second search warrant to gather evidence to prosecute the indictment. We reverse the denial of qualified immunity to Riebe for his role in approving the second search warrant to investigate additional crimes. We affirm the denial of qualified immunity to Hall on Plaintiffs' claims that Hall unreasonably relied on and executed the second search warrant. Finally, we affirm the denial of absolute immunity to defendants for their roles in the third search warrant, but reverse the denial of qualified immunity to Riebe and Hall on the claim of judicial deception.
 
 
 47
 We remand to the very capable district judge for further proceedings. Because Irey did not contest the denial of qualified immunity, we also remand to the district court those claims against Irey to which absolute immunity does not apply.[4]
 
 
 48
 AFFIRMED in part, REVERSED in part and REMANDED for further proceedings. No costs to either party.
 
 
 
 Notes:
 
 
 [1]
 Robert Womack is not a plaintiff in this action
 
 
 [2]
 Because defendants have come forward with evidence showing that the second search warrant sought, at least in part, to gather evidence to prosecute Womack, Plaintiffs must produce evidence to support their contention that the second search warrant wasexclusively focused on discovering evidence of crimes apart from the crimes charged in the indictment. See Butler, 370 F.3d at 963. Plaintiffs cite portions of Hall's deposition and Moore's testimony before the grand jury to support their argument. But Hall's testimony establishes only that the search warrant sought KRL's documents, and much of Moore's testimony pertains to his suspicions that KRL funded the storage tank's removal. Even viewing the facts in the light most favorable to plaintiffs, we cannot reasonably infer that the second search warrant was wholly unrelated to the indictment against Womack. As the district court observed, "most of Moore's affidavit focuses on the likelihood of criminal activity by Robert Womack in removing the [storage tank] and dissuading witnesses from testifying before the special grand jury." A genuine issue of fact certainly exists as to the extent that the search warrant sought to gather evidence to prosecute Womack rather than to further the collateral investigation.
 
 
 [3]
 Irey does not contest the denial of qualified immunity
 
 
 [4]
 The district court noted that it is unclear whether Plaintiffs are pursuing their claims against defendants in their official capacities. Without a final order from the district court, we decline to review that issue in this interlocutory appeal