**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GREG MOORE; PATRICIA
MOORE,
       *Plaintiffs-Appellees,*

 and

SOUTHWEST NONPROFIT
HOUSING CORPORATION; JC
MOORE GRANDCHILDREN'S
TRUST; ESMJ PARTNERS,
       *Plaintiffs,*

  v.

SEAN GARNAND, Detective; DAIN
SALISBURY, Sergeant,
       *Defendants-Appellants,*

 and

REBECCA LOPEZ, Detective;
RICHARD RADINSKY, Sergeant;
KIMBERLY FRIE, Sergeant; AMY
GARNAND; BENJAMIN FRIE;
HOLLY RADINSKY; CITY OF
TUCSON,
       *Defendants.*

No. 22-16236

D.C. No.
4:19-cv-00290-
RM-LAB

OPINION

Appeal from the United States District Court
for the District of Arizona
Rosemary Márquez, District Judge, Presiding

Argued and Submitted July 12, 2023
San Francisco, California

Filed September 29, 2023

Before:  Sidney R. Thomas, Mark J. Bennett, and Holly A.
Thomas, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[**]

### First Amendment Retaliation/Qualified Immunity

The panel reversed the district court's order on summary judgment denying qualified immunity to police officers in an action alleging, in part, First Amendment retaliation arising from defendants' investigation of two arsons at properties connected to plaintiff Greg Moore.

Plaintiffs alleged that in retaliation for Mr. Moore remaining silent during police questioning and plaintiffs' subsequent civil rights lawsuit and request for disclosures of public records, defendants, among other things, opened

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

criminal investigations against them and attempted to induce the IRS into opening a criminal investigation.

The panel first held that it had jurisdiction over the district court's denial of qualified immunity as to plaintiffs' First Amendment claims because defendants presented a purely legal issue: whether, taking as true plaintiffs' version of the facts, it was clearly established that defendants' conduct violated plaintiffs' First Amendment rights.

The panel next concluded that plaintiffs failed to show that defendants' conduct violated clearly established law. It was not clearly established that Mr. Moore has a First Amendment right to remain silent when questioned by the police. Nor was it clearly established that a retaliatory investigation per se violates the First Amendment. Defendants were therefore entitled to qualified immunity on the First Amendment claims based on Mr. Moore's silence and plaintiffs' lawsuits and requests for public disclosures.

The panel addressed plaintiffs' Fourth Amendment claims in a concurrently filed memorandum disposition.

## COUNSEL

Dennis P. McLaughlin (argued) and Sarah E. Pace, Principal Assistant City Attorneys; Michael G. Rankin, City Attorney; City Attorney's Office, Tucson, Arizona; for Defendants-Appellants.

Lawrence J. Wulkan (argued) and Jennifer L. Allen, Zwillinger Wulkan PLC, Phoenix, Arizona; Michael G. Moore, Law Office of Michael Garth Moore, Tucson, Arizona; for Plaintiffs-Appellees.

## OPINION

BENNETT, Circuit Judge:

   Greg and Patricia Moore (collectively, "Plaintiffs"),
husband and wife, filed this 42 U.S.C. § 1983 action against
several officers of the Tucson Police Department.  Officers
Sean   Garnand   and   Dain   Salisbury   (collectively,
"Defendants") are the only remaining defendants.  Plaintiffs'
complaint alleged First Amendment retaliation claims
arising from Defendants' investigation of two arsons that
occurred at properties connected to Mr. Moore.[1]  Defendants
appeal from the district court's order denying without
prejudice their motion for summary judgment based on
qualified immunity.

   We have jurisdiction to consider the purely legal issue of
whether, taking as true Plaintiffs' version of the facts, it was
clearly established that Defendants' conduct violated their
First Amendment rights.  Because Plaintiffs fail to show that
Defendants' conduct violated clearly established law,
Defendants are entitled to qualified immunity on the First
Amendment claims.  Thus, we reverse the district court's
denial of summary judgment as to the First Amendment
claims.

### I. BACKGROUND[2]

   Defendants' investigation started on the afternoon of
June 8, 2017, when a fire broke out at a building.  The cause

---

[1] In this opinion, we address only the First Amendment claims.  In a
concurrently filed memorandum disposition, we address Plaintiffs'
Fourth Amendment claims.

[2] For purposes of this opinion, we accept Plaintiffs' version of the facts
as true.  *See Giebel v. Sylvester*, 244 F.3d 1182, 1185 n.1 (9th Cir. 2001).

of the fire was determined to be arson. Mr. Moore arrived at the scene while the firefighters were still tending to the fire. He identified himself as being responsible for the property. Mr. Moore left the scene after an investigator from the fire department told him that he could leave. Later that night, a police officer called Mr. Moore and asked if he could meet to talk about the fire. Mr. Moore said that he could meet the next day at his office.

The next day, Defendants went to Mr. Moore's office with a search warrant that they had obtained on the night of the fire. Mr. Moore was in his office with an attorney. Officer Garnand identified himself and started to ask Mr. Moore questions. The attorney advised Mr. Moore to remain silent. Officer Garnand then explained that he had a warrant to seize Mr. Moore's cell phone and evidence from his person. The attorney said that Mr. Moore would not give up his cell phone. At that point, Officer Garnand took a cell phone out of Mr. Moore's hand and handcuffed him. Mr. Moore refused to answer any questions, stating that he was invoking his right to remain silent. Mr. Moore was transported to the police station, where his DNA and fingerprints were taken. He was released soon after.

Five days after Mr. Moore's arrest, Defendants obtained a warrant to search Mr. Moore's office and the Moores' home. The warrant was supported by Officer Garnand's affidavit, which referenced a 2011 arson at a property connected to Mr. Moore and the recent June 8, 2017 arson. Officer Garnand led the search at the Moores' home. Mrs. Moore was home alone and, sometime during the search, Officer Garnand told her, "You know we wouldn't be here if your husband had just talked to us."

In November 2017, Defendants caused the Tucson Police Department to open a criminal financial investigation against Plaintiffs. As part of the investigation, the police identified companies linked to Plaintiffs and obtained four subpoenas for the companies' financial records. These subpoenas were served on various banks. The investigation was closed on April 11, 2018, because there was no evidence that Plaintiffs had committed any crimes.

On August 13, 2018, Plaintiffs filed a § 1983 action in federal court against Officer Garnand.[3] The suit alleged Fourth Amendment violations related to the search warrants. After learning about that suit, Defendants reopened the criminal investigation against Plaintiffs. Defendants questioned two witnesses—the last contractor and the last tenant present at the property before the fire—and seized the contractor's cell phone. Defendants also tried to induce the Internal Revenue Service ("IRS") to open a criminal investigation against Plaintiffs.

In October and December 2018, Plaintiffs submitted public records requests to the Tucson Police Department, seeking all records related to them. In March 2019, Plaintiffs filed a special action in state court against the City of Tucson, seeking to compel the disclosure of certain documents that had been withheld.

Plaintiffs filed this suit in May 2019. They claim that Mr. Moore had a First Amendment right to remain silent when Defendants sought to question him at his office, and that their lawsuits and requests for information were also protected First Amendment activities. In retaliation for

---

[3] Plaintiffs voluntarily dismissed this suit in mid-2019 and replaced it with the instant suit.

exercising those rights, Defendants allegedly, without any reasonable suspicion, opened a criminal investigation against Plaintiffs; obtained four subpoenas for their companies' financial records; interviewed two witnesses; attempted to induce the IRS into opening a criminal investigation against Plaintiffs; and reopened the criminal investigation against Plaintiffs after it had been closed.[4] Additionally, as to the First Amendment claim based on Mr. Moore's silence, Plaintiffs allege that Defendants also retaliated by arresting Mr. Moore and obtaining and executing the search warrant for Mr. Moore's office and the Moores' home.

In December 2021, a magistrate judge granted Defendants leave to file their oversized motion for summary judgment based on qualified immunity. That same day, the district court lifted its order granting Defendants' law enforcement investigatory privilege ("LEIP"), which had been in effect since December 2019 and significantly limited Plaintiffs' scope of discovery. Plaintiffs moved to stay summary judgment briefing under Federal Rule of Civil Procedure 56(d),[5] arguing that they had been unable to

---

[4] Defendants opened the criminal investigation in November 2017 and obtained the subpoenas sometime before April 2018. Because these acts happened *before* August 2018, which is when Plaintiffs first engaged in any protected activity by filing suit against Officer Garnand, we do not consider them in analyzing Plaintiffs' First Amendment retaliation claims based on their lawsuits and requests for information. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (a decision to transfer an inmate that preceded the inmate's television interview could not have been made in retaliation for the interview). As noted below, however, we do consider them in analyzing the First Amendment retaliation claims based on Mr. Moore remaining silent.

[5] "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court

obtain evidence necessary to oppose the motion because of the LEIP.

In February 2022, Defendants filed an amended motion for summary judgment based on qualified immunity, and Plaintiffs renewed their Rule 56(d) motion. A magistrate judge granted Plaintiffs' Rule 56(d) motion in part by ordering Defendants to produce certain discovery but stayed all other discovery. The magistrate judge also ordered Plaintiffs to respond to Defendants' summary judgment motion.

Plaintiffs challenged the magistrate judge's rulings before the district court. The district court issued an order overruling the magistrate judge's relevant decisions. The order granted Plaintiffs Rule 56(d) relief and lifted the discovery stay. Rather than defer ruling on the motion, the district court decided to deny it: "Defendants' Amended Motion for Summary Judgment (Doc. 348) is denied without prejudice and with leave to re-file after the completion of discovery." Defendants timely appeal from the district court's denial.

## II. JURISDICTION

The parties dispute whether we have jurisdiction to consider the "First Amendment" portion of this appeal.[6] "An interlocutory appeal may be taken from the denial of immunity if the denial presents a question of law." *KRL v. Moore*, 384 F.3d 1105, 1109–10 (9th Cir. 2004). A question

---

may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

[6] We resolve the parties' Fourth Amendment jurisdictional dispute in our concurrently filed memorandum disposition.

of law is presented if the defendant argues that "assuming the facts as alleged by [plaintiff] to be true, his conduct did not violate [plaintiff's constitutional] rights, and that even if it did, he was entitled to qualified immunity." *Giebel v. Sylvester*, 244 F.3d 1182, 1186 (9th Cir. 2001) (footnote omitted); *see also KRL*, 384 F.3d at 1110 ("[T]he application of qualified immunity to Plaintiffs' allegations is a question of law . . . .").

Defendants present a purely legal question. They argue that, even assuming Defendants violated Plaintiffs' First Amendment rights, they are entitled to qualified immunity because the unlawfulness of their conduct was not clearly established. We have jurisdiction to consider that legal issue. *See Ames v. King County*, 846 F.3d 340, 347 (9th Cir. 2017) ("[W]e may adjudicate 'legal' interlocutory appeals; that is, we may properly review a denial of qualified immunity where a defendant argues . . . that the facts, even when considered in the light most favorable to the plaintiff, show . . . no violation of a right that is clearly established in law.").

Plaintiffs argue that we lack jurisdiction because the district court did not conclusively determine whether Defendants were entitled to qualified immunity. But our caselaw does not support Plaintiffs' position. In *Ganwich v. Knapp*, 319 F.3d 1115 (9th Cir. 2003), we rejected plaintiffs' argument that we lacked jurisdiction to review the denial of qualified immunity because "the district court's ruling occurred before the completion of discovery and expressly left the qualified immunity question open for reconsideration after the completion of discovery." *Id.* at 1119. We reasoned that jurisdiction was proper because "[f]orcing the defendant officers to undergo discovery, without the possibility of appeal to us, would erode any qualified

immunity to the burdens of discovery the officers might possess." *Id.*; *see also Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (holding that qualified immunity gives government officials a right "not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery" (internal quotation marks and emphasis omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 973 (9th Cir. 2009) ("[A]n order clearing the way for burdensome pre-trial discovery obligations renders the denial of immunity effectively unreviewable on appeal from final judgment— immunity from suit is of no use at that late stage.").

Under *Ganwich*, we have jurisdiction to consider purely legal qualified immunity questions when, as here, the district court denies the qualified immunity motion (thereby forcing defendants to undergo burdensome discovery) but leaves the issue open for reconsideration.[7]

Plaintiffs contend that *Ganwich* is distinguishable because it did not involve a denial of qualified immunity based on the district court's perceived need for further discovery. Under the circumstances, we do not view this as

---

[7] Because the district court *denied* Defendants' summary judgment motion, *Miller v. Gammie*, 335 F.3d 889, 894 (9th Cir. 2003) (en banc) (holding that the court lacked jurisdiction over an order that "did not expressly deny the motion" but "deferred ruling on immunity"), and *Moss v. U.S. Secret Service*, 572 F.3d 962, 972–73 (9th Cir. 2009) (holding that the court lacked jurisdiction over the district court's deferral of the summary judgment motion), do not control. *Miller* and *Moss* are further distinguishable because here, the district court's order subjected Defendants to discovery without limitation. *See Miller*, 335 F.3d at 892 (explaining that the order "deferred a ruling, pending *limited* discovery" (emphasis added)); *Moss*, 572 F.3d at 973 (explaining that "the district court ha[d] yet to order *any* discovery or to compel the Agents to submit to depositions").

a material distinction.  The district court's determination that Plaintiffs should have the opportunity to conduct further discovery under Rule 56(d) does not affect our ability to accept as true Plaintiffs' version of the facts and apply the qualified immunity legal standards to those facts.**[8]**  *See KRL*, 384 F.3d at 1117 (holding that we could decide qualified immunity as a matter of law, even though the district court's denial was based on a perceived need for more discovery). And our underlying rationale in *Ganwich* for finding jurisdiction—that "[f]orcing the defendant officers to undergo discovery, without the possibility of appeal to us, would erode any qualified immunity to the burdens of discovery the officers might possess," 319 F.3d at 1119— applies with equal force here, as the district court's order denying summary judgment subjected Defendants to unlimited discovery.

In sum, accepting as true Plaintiffs' version of the facts, we have jurisdiction to consider whether Defendants are entitled to qualified immunity because Plaintiffs' First Amendment rights were not clearly established at the time. *See Ames*, 846 F.3d at 347.

### III. STANDARD OF REVIEW

We review de novo a district court's denial of qualified immunity.  *Ames*, 846 F.3d at 347.  We "assume the version of the facts asserted by the nonmoving party."  *Moss*, 572 F.3d at 973.

---

[8] Because our de novo review of the qualified immunity issue, *see Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022), does not require us to consider the district court's reason for denying the summary judgment motion, we do not reach the question whether a Rule 56(d) determination could be an immediately appealable collateral order.

## IV. DISCUSSION

Plaintiffs' First Amendment retaliation claims can be divided into two categories: retaliation based on (1) Mr. Moore's decision to remain silent when Defendants sought to question him at his office; and (2) Plaintiffs' lawsuits against Officer Garnand and the City of Tucson, and their requests for disclosures of public records.

> To recover under § 1983 for [First Amendment] retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted).

"[T]o overcome qualified immunity, Plaintiffs must show that [defendants] (1) 'violated a federal statutory or constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the time.'" *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). We may analyze these elements in any order. *Id.* Here, we consider only whether Defendants' conduct violated a clearly established right.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  While we "do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  "The Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality." *Ballentine*, 28 F.4th at 64 (internal quotation marks omitted) (quoting *Wesby*, 138 S. Ct. at 590).

"In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent.  If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (internal citation omitted).  "[I]n the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes . . . ." *Id.* (internal quotation marks omitted) (quoting *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)).

## A.  Retaliation Based on Mr. Moore's Silence

Plaintiffs claim that Defendants retaliated against them because Mr. Moore exercised his First Amendment right to remain silent when questioned by Defendants.  But Plaintiffs identify no case that clearly established that a person has a *First Amendment* right to remain silent when questioned by the police.

Plaintiffs mainly rely on *Wooley v. Maynard*, 430 U.S. 705 (1977). In *Wooley*, the Court held that it was a First Amendment violation to compel plaintiffs to display the motto "Live Free or Die" on their license plates. *Id.* at 713. In reaching its holding, the Court stated generally that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and *the right to refrain from speaking at all*." *Id.* at 714 (emphasis added). Plaintiffs contend that this general statement clearly established Mr. Moore's First Amendment right to remain silent when questioned by Defendants.

But Plaintiffs' position is at odds with the Supreme Court's command that clearly established law not be defined at "a high level of generality." *Ballentine*, 28 F.4th at 64 (quoting *Wesby*, 138 S. Ct. at 590). "[T]he right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (internal quotation marks and citation omitted) (first quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam); and then quoting *Anderson*, 483 U.S. at 640). *Wooley* did not deal with First Amendment rights during police questioning. Nor did it suggest that its general statement about a First Amendment right to refrain from speaking could be extended to refusing to speak in response to police questioning, with or without *Miranda* rights. Thus, *Wooley* did not clearly establish a First Amendment right to remain silent during police questioning.**[9]** *See Riley's Am. Heritage*

---

[9] Plaintiffs also point to *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008), and *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en

*Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022) ("The right to be free from First Amendment retaliation cannot be framed as 'the general right to be free from retaliation for one's speech.' Rather, the right must be defined at a more specific level tied to the factual and legal context of a given case." (internal citation omitted) (quoting *Reichle*, 566 U.S. at 665)).

Substantial authority, although nonbinding, reinforces our conclusion that a First Amendment right to remain silent during police questioning was not clearly established at the time. *See, e.g.*, *Newsome v. Bogan*, 617 F. Supp. 3d 133, 152 (W.D.N.Y. 2022) ("No case in the Second Circuit has expressly held . . . that the right to decline to speak protects an individual's right to decline to participate in a police interview . . . ."); *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) ("The sparse case law that does exist . . . indicates no consensus that a defendant has a First Amendment right not to answer an officer's questions during a [*Terry*] stop . . . ."); *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011) ("[W]e . . . have found no authority recognizing a First Amendment right to refuse to answer questions during a *Terry* stop."); *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 949 (M.D.N.C. 2011) ("[T]he Court rejects Plaintiffs' legal contention that declining to speak to police officers during a criminal investigation raises First Amendment protections."), *aff'd in part, rev'd in part, dismissed in part on other grounds sub nom. Evans v.*

---

banc). But neither case suggested—much less clearly established—a First Amendment right to remain silent during police questioning. *See Beck*, 527 F.3d at 868–69 (analyzing First Amendment retaliation claims based on "brusque comments" and "advocacy efforts"); *Lacey*, 693 F.3d at 916–17 (analyzing First Amendment retaliation claims based on "newspaper articles criticizing public officials").

*Chalmers*, 703 F.3d 636 (4th Cir. 2012). *But see Mendia v. Garcia*, No. 10-CV-03910-MEJ, 2016 WL 2654327, at \*8 (N.D. Cal. May 10, 2016) (recognizing that plaintiff had a First Amendment right not to speak to ICE agents).

Because it was not clearly established that Mr. Moore had a First Amendment right to remain silent when questioned by Defendants, Defendants are entitled to qualified immunity on the First Amendment claims based on Mr. Moore's silence. *See Ballentine*, 28 F.4th at 61.

## B. Retaliation Based on Plaintiffs' Lawsuits and Requests for Information

Plaintiffs filed suits against Officer Garnand and the City of Tucson and requested disclosures of public records.[10] Plaintiffs claim that in retaliation for exercising those First Amendment rights, Defendants conducted a criminal investigation against Plaintiffs without any reasonable suspicion—which included interviewing two witnesses—and attempted to induce the IRS into opening a criminal investigation against Plaintiffs. In short, Plaintiffs allege that Defendants violated their First Amendment rights by pursuing a retaliatory investigation.

Again, however, Plaintiffs identify no caselaw that clearly established that a retaliatory investigation per se violates the First Amendment. The Supreme Court has not decided the issue. *See Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006) ("Whether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation is not before us."); *see also Rehberg*

---

[10] Defendants do not dispute that these actions were protected First Amendment activities.

*v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010) ("[The] right to be free from a retaliatory investigation is not clearly established. The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort . . . .").

Plaintiffs rely on two Ninth Circuit cases, but neither held that a retaliatory investigation by itself was unconstitutional. In *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003), plaintiff "[a]llege[d] that prison officials violated his First Amendment right to file prison grievances when they validated him as a [gang] member in retaliation for his filing of several grievances." *Id.* at 1288. *Bruce* is inapt because the alleged retaliatory action was the validation of the plaintiff as a gang member, not any investigations conducted by the prison officials. *See id. White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), did involve a retaliatory investigation. *Id.* at 1226. But in *White*, the government's investigation was materially different than the investigation here. The officials in *White* questioned plaintiffs under threat of subpoena, directed them to produce documents, told plaintiffs and reported to a newspaper that plaintiffs had violated the Fair Housing Act, and "advised [plaintiffs] to accept a 'conciliation proposal' that required them to cease all litigation and the distribution of 'discriminatory' newsletters and flyers." *Id.* at 1220. We held that, considering the *entirety* of the officials' acts, they had violated plaintiffs' First Amendment rights. *Id.* at 1238 ("*The scope and manner of the investigation* violated the plaintiffs' First Amendment rights." (emphasis added)).

Defendants' actions (even as Plaintiffs allege them and even disregarding the uncontested facts as to the arsons

themselves[11])—unjustifiably pursuing a criminal investigation, interviewing two witnesses, and attempting to induce the IRS to open an investigation—were materially different from the acts at issue in *White*.  Other than *perhaps* putting Defendants on notice at a very high level of generality that their actions might raise First Amendment concerns, *White* could not have put Defendants on sufficient notice that their actions would violate Plaintiffs' First Amendment rights.  *See al-Kidd*, 563 U.S. at 741.

Although it is Plaintiffs' burden to identify the clearly established law, *see Ballentine*, 28 F.4th at 61, we were also unable to find any binding precedent that clearly established a First Amendment violation based on a retaliatory investigation.  *See, e.g.*, *Twitter, Inc. v. Paxton*, No. 21-CV-01644-MMC, 2021 WL 1893140, at *3 (N.D. Cal. May 11, 2021) (noting that "Twitter cites no case holding the institution of an allegedly retaliatory investigation, by itself, constitutes a cognizable adverse action," and that the issue has not been decided by the Ninth Circuit).  Our review of nonbinding authority also supports that it was not clearly established that a retaliatory investigation violates the First Amendment.  *See Lincoln v. Maketa*, 880 F.3d 533, 539–41 (10th Cir. 2018) (holding that a criminal investigation into plaintiff and his children was not an adverse employment action supporting a First Amendment retaliation claim because it was not clearly established that a "retaliatory criminal investigation entails a constitutional violation," *id.* at 540)[12]; *Rehberg*, 611 F.3d at 851 ("[The] right to be free

---

[11] And even further disregarding that Mr. Moore was later indicted for the arsons.

[12] *Lincoln*, 880 F.3d at 540, noted that in *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), we had suggested that a retaliatory criminal

from a retaliatory investigation is not clearly established."); *Colson v. Grohman*, 174 F.3d 498, 513 (5th Cir. 1999) (rejecting a First Amendment retaliation claim because Fifth Circuit "caselaw unequivocally hold[s] that retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983").

Because Plaintiffs fail to meet their burden of showing that Defendants' investigatory conduct violated clearly established law, Defendants are entitled to qualified immunity on the First Amendment claim based on Plaintiffs' lawsuits and requests for disclosures. *See Ballentine*, 28 F.4th at 61.

## V. CONCLUSION

We have jurisdiction over the district court's denial of qualified immunity as to Plaintiffs' First Amendment claims because Defendants present a purely legal issue: whether, taking as true Plaintiffs' version of the facts, it was clearly established that Defendants' conduct violated Plaintiffs' First Amendment rights.  Plaintiffs fail to show that Defendants' conduct violated clearly established law.  Thus, Defendants are entitled to qualified immunity on the First Amendment claims, and we reverse the district court's

---

investigation could violate the First Amendment.  Even assuming without deciding that *Coszalter* suggested as such, we never held that a retaliatory investigation alone could violate the First Amendment, as our holding rested on much more than just a retaliatory investigation.  *See id.* at 976–77 (listing numerous retaliatory acts and concluding that "[w]*hen taken together*, it is clear that these acts amounted to a severe and sustained campaign of employer retaliation that was 'reasonably likely to deter' plaintiffs from engaging in speech protected under the First Amendment" (emphasis added)).

denial of summary judgment as to the First Amendment claims.

**REVERSED.**[13]

---

[13] The parties shall bear their own costs on appeal.