UNITED STATES of America, Plaintiff–Appellant,

v.

Stephen KOW; Helen Kim Noi Soo; and Hong Tho Luu, Defendants–Appellees.

No. 94–10258.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1995.

Decided June 21, 1995.

---

Joseph Douglas Wilson, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Doron Weinberg, Weinberg & Wilder, San Francisco, CA, for defendants-appellees.

Before FLETCHER, REINHARDT, and NOONAN, Circuit Judges.

FLETCHER, Circuit Judge:

The government appeals the district court's suppression of evidence seized pursuant to a search warrant. We have jurisdiction under 18 U.S.C. § 3731 and affirm.

## FACTS

On October 15, 1990, FBI agents entered the offices of the defendants' business, Hong Kong T.V. Video Program, Inc. ("HK Video"), and seized essentially all of the business's records, computer hardware and software, files, ledgers, and invoices pursuant to a warrant issued by a magistrate judge based on the affidavit of FBI Special Agent John Gordon.

HK Video enjoys an almost exclusive license to distribute within the United States video cassettes from Hong Kong TVB ("HK T.V."), a television company in Hong Kong. Gordon's affidavit alleged that HK Video maintained multiple sets of accounting records, paid falsified invoices submitted by phony corporations, and paid employees under the table, all for the purpose of defrauding the Internal Revenue Service and HK T.V., sending the skimmed profits to fictitious companies in Hong Kong. The affidavit also alleged that when HK Video learned that its license with HK T.V. was in jeopardy and might be awarded instead to H.K. Video's competitor, Shaw Home Entertainment ("Shaw"), Shaw's employees became the targets of threatened and actual violence until Shaw notified HK T.V. that it was no longer interested in the license.

A substantial portion of Gordon's affidavit summarizes various threats and criminal acts for and against people associated with Shaw and HK Video. With regard to HK Video's bookkeeping procedures, Gordon summarized information provided by two informants who claimed that HK Video maintained multiple sets of accounting books to avoid paying income taxes. Gordon's more detailed information came from the second informant ("CI–2"), who, for instance, reported that HK Video also falsified its invoices to avoid paying taxes and that the profits of the scheme often were wired through the Bank of Trade to J & P Studios, Ltd., a dubbing business involved with HK Video, or to Ever Spring, a fictitious company sharing the same address as J & P Studios. CI–2 also described where agents could find incriminating documents within H.K. Video's offices.

The warrant authorized the seizure of:

A. Bank statements, cancelled checks, deposit slips, wire transfer records, cashier's checks, money orders, checkbooks or check registers, and other records relating to bank transactions;

B. Journals or records reflecting funds received or funds disbursed;

C. Ledgers or other records summarizing financial transactions;

D. Journals or other records listing adjustments to the ledgers or books of account;

E. Balance sheets, income statements or other financial statements;

F. Contracts, invoices, titles, or other documents evidencing their receipt and disposition of funds or income;

G. Records relating to the preparation of Federal Tax Returns for the years 1983 through the present, including but not limited to work papers, Forms 1099, retained copies of Form 1040 and 1120, and Employee Wage Statement Forms W-2, Payroll Tax Returns, including quarterly Forms 940 and 941, and Sales Tax Returns filed with the California State Board of Equalization;

H. Correspondence, policies, billings, invoices, claims, notes and records relating to insurance, finances, or corporate activities reflective of false or fraudulent financial transactions;

I. Records relating to any fake or fraudulent transactions between or among Jack Soo, Helen Soo, Stephen Kow, and Hong. T. Luu;

J. Records of all loans received or granted by or for [HK Video] and records of payments;

K. Computers, magnetic floppy disks or diskettes, including 3½ inch, 5¼ inch, or 8 inch sizes, compact disks, magnetic tapes, including cassettes, cartridges, streaming tape, video tape, hard disk units (with attached control card), magnetic cards, and any other electronic data processing storage medium;

L. Articles of Incorporation, corporate resolutions, corporate minute books, and corporate stock books;

M. Records and documents relating to [HK Video's] business dealings and transactions with Rainbow Video and any and all video stores and businesses sub-licensed by [HK Video] to do business;

N. Notes, memorandae, schedules, and written recollections reflecting any disparity between income earned and income officially reported.

After FBI agents executed the warrant, a grand jury returned a 26-count indictment charging the defendants with corporate tax evasion, individual tax fraud, and profit skimming. Judge Lynch, the district court judge, in a careful and thorough opinion holding that the warrant was not sufficiently specific, suppressed the evidence seized incident to the execution of the warrant. We review his decision de novo. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986).

## DISCUSSION

The government claims that the warrant was sufficiently particular and, to the extent that the warrant was more broad than most, the breadth was justified because Gordon's affidavit established probable cause to believe that nearly all of HK Video's records were likely to evidence criminal activity. The government alternatively contends that, at most, only some sections of the warrant are overbroad and that we should sever these invalid portions and uphold the remainder of the warrant, suppressing only evidence seized under the invalid portion. Finally, the government argues that, even if the warrant was unconstitutionally overbroad, it was not so facially invalid as to preclude good faith reliance upon it by FBI agents executing the warrant. We reject each of the government's arguments and affirm.

I. Specificity

█ To determine whether a warrant lacks sufficient specificity, we must examine both the warrant's particularity and its breadth. *See In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir.1991).

## A. Particularity

The warrant authorized the seizure of virtually every document and computer file at HK Video. To the extent that it provided any guidance to the officers executing the warrant, the warrant apparently sought to describe every document on the premises and direct that everything be seized. The government emphasizes that the warrant outlined fourteen separate categories of business records. However, the warrant contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity. By failing to describe with any particularity the items to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be unconstitutional. *E.g., Center Art Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747, 750 (9th Cir.1989); *United States v. Stubbs,* 873 F.2d 210, 211 (9th Cir.1989) (warrant invalid "because of the complete lack of any standard by which an executing officer could determine what to seize").

■ " '[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible.' " *United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982) (quoting *United States v. Bright,* 630 F.2d 804, 812 (5th Cir.1980)). The government could have made the warrant more particular. Most obviously, the warrant could have specified the suspected criminal conduct. Except for vague references to "fraudulent" transactions and possible disparities between actual and reported income, the warrant failed to give any indication of the alleged crime to which the seized documents pertained. We have criticized repeatedly the failure to describe in a warrant the specific criminal activity suspected. *See, e.g., Center Art Galleries,* 875 F.2d at 750; *Stubbs,* 873 F.2d at 212; *Cardwell,* 680 F.2d at 77.

The government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place,[1] even though Gordon's affidavit indicates that the alleged criminal activity began relatively late in HK Video's existence. Furthermore, although Gordon's affidavit summarized in detail the various locations within HK Video where officers could find relevant documents, this information was excluded from the warrant. *See Stubbs,* 873 F.2d at 211 ("The IRS knew both what the seizable documents looked like and where to find them, but this information was not contained in the warrant"). Here the government did not contain the scope of the warrant by reference to limiting descriptions in the affidavit such as HK Video's tax identification number, HK Video's account number at the Bank of Trade, or the names of the foreign companies allegedly receiving the proceeds of the defendants' profit-skimming, to wit Ever Spring and J & P Studios. As drafted, the warrant simply was not sufficiently particular.

## B. Breadth

■ A generalized seizure of business documents may be justified if the government establishes probable cause to believe that the entire business is merely a scheme to defraud or that all of the business's records are likely to evidence criminal activity. *See generally United States v. Offices Known as 50 State Distrib. Co.,* 708 F.2d 1371, 1374 (9th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). The government acknowledges that the warrant authorizes the seizure of essentially every business record in HK Video's offices, but it maintains that this widespread seizure did not exceed the probable cause as to the many crimes on which the warrant was based. We disagree.

■ Despite its length and complexity, Gordon's affidavit did not establish the probable cause required to justify the widespread seizure of documents authorized by the warrant in this case. Much of the information in the affidavit relates to alleged acts of violence against Shaw's employees and other people associated with HK Video which crimes have no apparent connection to the business documents sought in the warrant. The remainder of the affidavit established probable cause to believe that the defendants were using HK Video for personal profit and to avoid paying income taxes, but is not

1. In only one of the fourteen categories of documents did the warrant include a time restriction.

sufficient to bring this case within the "permeated with fraud" doctrine.

Gordon's own affidavit concedes that HK Video "is a legitimate business and serves a need in the communities where it is located." Moreover, there was no allegation in the affidavit that HK Video was permeated with fraud or that the government could not reasonably segregate HK Video's documents on the basis of whether or not they were likely to evidence criminal activity. *See Center Art*, 875 F.2d at 751 ("permeated with fraud" doctrine held not to apply where the supporting affidavit "did not aver that evidence of [the alleged] fraud was inseparable from other [business] documents or that [the business] was permeated with fraud"); *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir.1986) (proper showing must be made "in obtaining" the warrant).[2]

## II. Severability

■■■ The government maintains that even if some categories of the warrant were overbroad, certain sections of the warrant were valid and evidence seized pursuant to these sections should not be suppressed. *See United States v. Gomez–Soto*, 723 F.2d 649, 654 (9th Cir.), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). However, "severance is not always possible." *Cardwell*, 680 F.2d at 78. In particular, "[i]f no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required. Otherwise the abuses of a general search would not be prevented." *Id.*

Here, none of the fourteen categories of seizable documents was limited by reference to any alleged criminal activity. Only Category G, authorizing seizure of tax returns since 1983, was limited as to time. Although Category M, authorizing the seizure of all documents related to HK Video's dealings with other businesses sublicensed by HK T.V., arguably was not overbroad, "severance is not available when the valid portion of the

warrant is 'a relatively insignificant part' of an otherwise invalid search." *In re Grand Jury Subpoenas*, 926 F.2d at 858 (quoting *Spilotro*, 800 F.2d at 967).

## III. Good Faith Reliance

■■■ Evidence seized pursuant to a facially valid search warrant which later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant. *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). The government bears the burden of proving that reliance upon the warrant was objectively reasonable. *Michaelian*, 803 F.2d at 1048.

■■■ Although the government maintains that the oversight of two AUSA's and the approval of a magistrate is sufficient to establish reasonable reliance on the warrant, the cases on which it relies do not involve warrants as overbroad as the warrant here. For example, in *Michaelian*, the warrant was limited with respect to time and particular criminal activities and was not "so overbroad as to be facially deficient." *Id.* at 1048.

In contrast, as we have emphasized, the warrant in this case listed entire categories of documents to be seized, encompassing essentially all documents on the premises. We have been "vigilant in scrutinizing officers' good faith reliance on such illegally overbroad warrants." *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir.1989). The warrant in this case is less particular than the warrant in *Stubbs*, which also authorized seizure of "broad classes of documents without specific description of the items to be seized," but at least contained a restriction regarding the dates of the business records to be seized. 873 F.2d at 212. Nevertheless, we held that the warrant was so overbroad that agents could not reasonably rely on it. *Id.*

■■■ Because the warrant in this case was facially invalid, no reasonable agent could

2. To the extent that it was difficult for the government to create a more particularized warrant, the government may be to blame. Like the district court, we are troubled by "the government's decision to refrain from further investigation such as the audit done in [*United States v. Michaelian*, 803 F.2d 1042 (9th Cir.1986)], and yet rely on the lack of specific information to justify the lack of particularity in the warrant."

have relied on it "absent some exceptional circumstance." *See Center Art,* 875 F.2d at 753. The mere fact that the warrant was reviewed by two AUSA's and signed by a magistrate does not amount to "exceptional circumstances." Those exact circumstances were present in *Center Art* and we found them insufficient to meet the test. As we explained in that case, when a warrant is facially overbroad, absent *specific assurances* from an impartial judge or magistrate that the defective warrant is valid despite its overbreadth, a reasonable reliance argument fails. *Id.; see also United States v. Crozier,* 777 F.2d 1376, 1381–82 (9th Cir.1985); *Spilotro,* 800 F.2d 959, 968 (9th Cir.1986).

■■■■ The government also reminds us that Gordon believed that his affidavit had been incorporated into the warrant and instructed the executing officers to read the affidavit prior to the search.[3] In *United States v. Luk,* 859 F.2d 667 (9th Cir.1988), the only case in which we have held officers' reliance on an overbroad warrant to have been in good faith, we considered as evidence of the officers' good faith their reliance on an affidavit where the affiant was present and supervising the search, even though the affidavit was not expressly incorporated into the warrant by reference and may not have been in the hands of executing officers during the search. *See id.* at 677 & n. 10; *see also Towne,* 997 F.2d at 550, n. 6 (discussing *Luk* in dictum).

*Luk* provides no support to the government's good faith claim in this case in light of our more recent decision in *Center Art Galleries.* In *Center Art Galleries,* the Government argued that the overbreadth of a facially defective warrant was cured by a more particular affidavit or, alternatively, that executing officers had acted in good faith reliance on the defective warrant. We rejected the government's "cure by affidavit" claim because the warrant did not expressly incorporate the affidavit, the affidavit was not physically attached to the warrant, and executing officers did not give a copy of the affidavit to the owner of the premises as part of the search. 875 F.2d at 750.

Moreover, even though it appeared that at least some of the executing officers had copies of the affidavit when they conducted the search, we rejected the government's claim of good faith. Although we did not expressly discuss the relevance of the executing officers' possession of the affidavit with regard to the government's claim of good faith, we did state, "We are unaware of any Ninth Circuit or Supreme Court case which has applied [the good faith exception] to a warrant approximating the degree of facial overbreadth which would preclude reasonable reliance." *Id.* at 753. Implicitly, then, we distinguished *Luk* on the basis that *Luk* did not involve the same degree of overbreadth found in the warrant at issue in *Center Art Galleries.*

The warrant in this case is at least as overbroad as the warrant at issue in *Center Art Galleries.* Moreover, unlike the facts in *Luk,* there is absolutely no evidence in this case that the officers who executed the warrant, although instructed to read the affidavit, actually relied on the information in the affidavit to limit the warrant's overbreadth. Indeed, the government concedes that agents seized virtually all of the records and computer files on HK Video's premises. *Cf. Luk,* 859 F.2d at 677 ("agents specifically relied on the affidavit in determining at the scene what items were properly within the scope of the search").

Furthermore, unlike the affidavit relied on in *Luk,* Gordon's affidavit did not offer the level of guidance necessary to cure a facially invalid warrant. Rather than describe with particularity the items to be seized in the search, the affidavit includes the same list of general and overbroad categories reiterated

---

3. The government does not argue that Gordon's affidavit "cured" the overbroad warrant. An affidavit providing more guidance than an overbroad warrant may cure the warrant's overbreadth only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search. *United States v. Towne,* 997 F.2d 537, 544 (9th Cir.1993). Gordon's affidavit met neither of these requirements. Despite this failure, however, the government argues that Gordon's *belief* that the warrant incorporated the affidavit and his instruction to the executing officers to read the affidavit evidences the agents' good faith.

in the warrant. *Cf. Luk,* 859 F.2d at 677 (affidavit "provided the particularity that the warrant lacked"). Moreover, the affidavit is extremely long and unorganized and does not refer to specific dates, transactions, or criminal offenses. Although the affidavit contained some information that could have been used to make the warrant more specific (e.g., HK Video's tax identification number and bank account number), the information was buried among thirty-five pages of less helpful material and would not have assisted officers executing the warrant to narrow the scope of their search. Thus, the government's argument would fail even if an affidavit could cure in these circumstances simply because the affidavit was too broad.[4]

## CONCLUSION

The warrant in this case is indistinguishable from warrants previously held by our court to be unconstitutionally general and overbroad. Although Gordon's affidavit established probable cause to seize some business records, it did not establish that HK Video was "permeated with fraud," the type of showing required to justify the wholesale seizure of business records that occurred here. The warrant should have been limited by time, location, and relationship to specifically described suspected criminal conduct. It was wholly deficient.

AFFIRMED.

---

4. Although in a footnote in *Luk,* 859 F.2d at 677 n. 10, we speculated that the failure to have a limiting affidavit present at the time of a search would not necessarily preclude a finding of good faith reliance, such speculation seems inconsistent with the developments in subsequent case law, and may thus not be an accurate reflection of the current status of our law. *Towne, Center Art* and other cases say that a central purpose underlying the requirement that a limiting affidavit physically accompany the warrant is to ensure that the person whose property is to be searched will be able to examine the document to determine what items may lawfully be seized. *See, e.g., Towne,* 997 F.2d at 545–46 ("The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the persons subject to the search what items the officers executing the warrant can seize."); *Center Art,* 875 F.2d at 750 ("requirement assures that 'the person being searched has notice of the specific items the officer is entitled to seize.' ") (quoting *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir.1981)). Under this reasoning, it would seem anomalous to conclude that an officer executing a search warrant who failed to take the limiting affidavit with him, nonetheless had a good faith belief that the process he followed complied with the law. However, because both the warrant and the affidavit at issue here were so facially overbroad as to preclude reasonable reliance, we need not resolve any question regarding the application of the *Luk* footnote.