CALLAHAN, Circuit Judge,
with whom TALLMAN, Circuit Judge joins,
dissenting:
Although the majority’s opinion nicely lays out the law applicable to a determination of qualified immunity, my review of the law and the facts in this case require that I dissent. I address four matters. First, I take issue with the majority’s determination that the warrant constitutionally could not provide for the search and seizure of firearms other than the sawed-off shotgun. Second, in reviewing the applicable case law, the majority fails to appreciate the factors courts have used to transform an abstract standard — did the officer reasonably rely on review by counsel and a magistrate — into a workable guide for a line officer. Third, I would find that the totality of the circumstances in this case compels a finding that the line officer reasonably relied on his supervisors, the district attorney, and the magistrate to determine the constitutional limits of the search warrant. Finally, I am concerned that the majority’s parsing of the search warrant is likely to encourage uncertainty and needless litigation. I would grant the officer qualified immunity.
I
Our differing views on the warrant’s provision for the search and seizure of firearms are revealed by our respective applications of United States v. Spilotro, 800 F.2d 959 (9th Cir.1986), which sets forth the framework for determining a warrant’s sufficiency. There we held that “[i]n determining whether a description is sufficiently precise,” we should concentrate on one or more of the following:
(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.
Id. at 963 (citations omitted).
The majority admits that there was probable cause to search for and seize the *1036 “black sawed-off shotgun with a pistol grip,” but objects that “the affidavit does not set forth any evidence indicating that Bowen owned or used any other firearms, that such firearms were contraband or evidence of a crime, or that such firearms were likely to be present at the Millenders’ residence.” Op. at 1025. This approach overlooks the fact that the search warrant was accompanied by an arrest warrant for Bowen, the real object of the search, who the officer believed resided at the residence. Bowen was reasonably considered to be dangerous. He had fired a shotgun in public at Kelly, was a member of a street gang, and had a criminal record including prior felonies.[1] Because of Bowen’s dangerousness, the deputies requested nighttime service of the warrant. The magistrate approved nighttime service, and the district court held that the facts specified in the affidavit were sufficient to justify nighttime service. The district court also concluded that the arrest warrant was facially valid and that its authorization to search for evidence tending to establish who controlled the premises was constitutional. Op. at 1023.
Given this context, the officers had probable cause to search for and seize any firearms in the home in which Bowen, a gang member and felon, was thought to reside. In Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court held that probable cause exists when “there is a fair probability that contraband or evidence of a crime will be found in a particular place.”[2] See also United States v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006). Firearms by their very nature are dangerous and numerous laws render their possession by convicted felons criminal. See, e.g., 18 U.S.C. § 922(g). Thus, in light of the facts known to the officer, i.e., that Bowen had recently fired a shotgun at his girl friend, was a gang member, was a felon, and presumably was armed, there was at least a “fair probability” not only that there might be firearms in the house in which Bowen was believed to be residing, but that such firearms would be “contraband or evidence of a crime.”[3] Moreover, the safety of all involved, both the officers and the inhabitants of the home, requires that officers seeking the nighttime arrest of a dangerous felon be allowed to seize any firearm that they come across in their search for that individual or for evidence that is otherwise properly *1037 covered by the search warrant.[4] Indeed, securing any weapons found during the search is justified to protect the officers executing the warrant from harm while doing so.
Once it is understood that there was a fair probability that any firearms found in the house in which Bowen was thought to reside would be contraband or evidence of a crime,[5] the warrant meets the second and third provisions of the Spilotro framework. The warrant sets out firearms and firearms-related items in objective language that allowed the officers to differentiate what items they might seize.[6] Furthermore, as any firearm was likely to be contraband or evidence of a crime, a more particular description was neither required nor desirable. Accordingly, I dissent from the majority’s determination that the warrant’s provision for the search and seizure of firearms was unconstitutional.[7]
II
A. Supreme Court Authority
The majority and I agree that the standard for determining qualified immunity has been set forth by the Supreme Court in Malley v. Briggs, 475 U.S. 335, 345-46, *1038 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) and Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Moreover, there is little difference in our reading of these opinions in the abstract. Rather, we differ on the application of the qualified immunity test to a front line police officer’s request for an arrest warrant and accompanying search warrant. The majority’s position is difficult to reconcile with the Fourth Amendment’s preference for searches authorized by neutral and detached magistrates.
In Malley, the Supreme Court considered a claim that a police officer caused the plaintiffs to be unconstitutionally arrested by presenting a judge with an affidavit which failed to establish probable cause. 475 U.S. at 337, 106 S.Ct. 1092. The Court first rejected an argument that the police officer was entitled to absolute immunity. Id. at 340-41, 106 S.Ct. 1092. After explaining the basis for adopting an “objective reasonableness” standard, the Court commented:
We also reject petitioner’s argument that if an officer is entitled to only qualified immunity in cases like this, he is nevertheless shielded from damages liability because the act of applying for a warrant is per se objectively reasonable, provided that the officer believes that the facts alleged in his affidavit are true. Petitioner insists that he is entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant. This view of objective reasonableness is at odds with our development of that concept in Harlow and Leon. In Leon, we stated that “our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate’s authorization.” 468 U.S. at 922 n. 23, 104 S.Ct. 3405, ... The analogous question in this case is whether a reasonably well-trained officer in petitioner’s position would have known that his affidavit failed to’ establish probable cause and that he should not have applied for the warrant. If such was the case, the officer’s application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.
Id. at 345-46, 106 S.Ct. 1092 (footnotes omitted). The Court offered additional guidance in the following footnote:
Notwithstanding petitioner’s protestations, the rule we adopt in no way “requires the police officer to assume a role even more skilled ... than the magistrate.” ... It is a sound presumption that “the magistrate is more qualified than the police officer to make a probable cause determination,” ibid., and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, ie., his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot *1039 excuse his own default by pointing to the greater incompetence of the magistrate.
Id. at 346 n. 9,106 S.Ct. 1092.[8]
The second Supreme Court case relied on by the majority, Groh, provides guidance on the application of the Malley standard. In Groh, the warrant completely failed to identify the items to be searched.[9] 540 U.S. at 554, 124 S.Ct. 1284. The Supreme Court held that the warrant was “plainly invalid,” id. at 557, 124 S.Ct. 1284, and that “even a cursory reading of the warrant in this case — perhaps just a simple glance — would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal.” Id. at 564,124 S.Ct. 1284. Accordingly, the Court declined to allow petitioner to invoke the magistrate’s approval of the warrant as shielding him from liability for preparing an invalid warrant that was contrary to his department’s own guidelines. See 540 U.S. at 564, 124 S.Ct. 1284.
Despite the fact that the warrant was facially invalid, four Justices dissented. In his dissent, Justice Kennedy, joined by Chief Justice Rehnquist, stated that the central question is whether “someone in the officer’s position could reasonably but mistakenly conclude that his conduct complied with the Fourth Amendment.” 540 U.S. at 566, 124 S.Ct. 1284. He commented that an officer “may be unaware of existing law and how it should be applied,” “may misunderstand important facts about the search and assess the legality of his conduct based on that misunderstanding,” or “may misunderstand elements of both the facts and the law.” Id. at 566-67, 124 S.Ct. 1284. Justice Kennedy asserted that the “qualified immunity doctrine applies regardless of whether the officer’s error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.” Id. at 567, 124 S.Ct. 1284.
Justice Kennedy went on to assert that language in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was not applicable to the situation before the Court because the respondents “do not make the usual claim that they were injured by a defect that led to an improper search” but “were injured simply because the warrant form did not contain the correct description of the property to be seized even though no property was seized.” Id. at 570-71, 124 S.Ct. 1284. He concluded that the Court “has stressed ‘the purpose of encouraging recourse to the warrant procedure’ can be served best by rejecting overly technical standards when courts review warrants.” Id. at 571, 124 S.Ct. 1284 (quoting Gates, 462 U.S. at 237, 103 S.Ct. 2317).
*1040 Justice Thomas filed a separate dissenting opinion, joined by Chief Justice Rehnquist and Justice Scalia, which in addition to questioning whether the underlying search was unconstitutional, held that the officer was entitled to qualified immunity. He objected that the Court had used an inappropriate “high level of generality” to establish a clear violation of the Constitution.[10] Instead, he opined that the focus should be on “ ‘the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson’s warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed.’ ” Id. at 578, 124 S.Ct. 1284 (quoting Anderson, 483 U.S. at 641, 107 S.Ct. 3034).
A third Supreme Court decision, Leon, 468 U.S. 897, 104 S.Ct. 3405, is also instructive. In Leon, the Supreme Court adopted a good-faith exception for the exclusionary rule where evidence had been obtained as a result of a warrant that was subsequently determined to lack probable cause. In doing so, the Court stressed that the “detached scrutiny of a neutral magistrate ... is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer.” Id. at 913-14, 104 S.Ct. 3405. The Court noted that “[rjeasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according ‘great deference’ to a magistrate’s determination.” Id. at 914, 104 S.Ct. 3405 (internal citation omitted). The Court, however, noted that deference was not boundless, and did not preclude inquiry into (1) “the knowing or reckless falsity of the affidavit [supporting the warrant],” (2) whether the magistrate “merely served as a rubber stamp for the police,” and (3) whether the affidavit provided the magistrate “with a substantial basis for determining the existence of probable cause.” Id. at 914-15, 104 S.Ct. 3405 (quoting Gates, 462 U.S. at 239, 103 S.Ct. 2317). Thus, a reviewing court “may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate’s probable-cause determination reflected an improper analysis of the totality of the circumstances, ... or because the form of the warrant was improper in some respect.” Id. at 915, 104 S.Ct. 3405 (internal citation omitted).
Nonetheless, the Court noted that “where the officer’s conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way: for it is painfully *1041 apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances.” Id. at 919-20, 104 S.Ct. 3405 (internal quotation marks and citation omitted). The Court commented that “[i]t is the magistrate’s responsibility to determine whether the officer’s allegations establish probable cause,” and “[i]n the ordinary case, an officer cannot be expected to question the magistrate’s probable-cause determination or his judgment that the form of the warrant is technically sufficient.” Id. at 920, 104 S.Ct. 3405. The Court concluded that “[penalizing the officer for the magistrate’s error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.” Id.
Finally, the Court explained that the officer’s reliance on the magistrate’s probable-cause determination must be objectively reasonable. Id. at 922, 104 S.Ct. 3405. The “good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate’s authorization.” Id. at 920 n. 23, 104 S.Ct. 3405. The Court then indicates that suppression would be appropriate where (1) the magistrate “was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;” (2) “the issuing magistrate wholly abandoned his judicial role;” (3) where the affidavit was “so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable” (quoting Brown v. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)); or (4) the warrant was facially deficient “in failing to particularize the place to be searched or the things to be seized.” Id. at 923, 104 S.Ct. 3405.
Although the case at bar concerns qualified immunity and not the suppression of evidence, the Court’s discussion in Leon of the role of the magistrate and deference to the magistrate informs' — as the majority recognizes — -our analysis of the officer’s conduct in our case.
In sum, I agree with the majority that pursuant to Malley and Groh, the question is whether a reasonably well-trained officer in the defendant’s situation would have known that the warrant did not establish probable cause. Op. at 12734-35. But an appreciation of the specific language in the Supreme Court’s opinions should lead us to focus on those factors that transform an abstract standard into a workable guideline for a line officer.
B. Ninth Circuit Authority
A review of our own precedent reveals and reinforces the factors that should be considered in determining whether an officer who sought a warrant reasonably relied on review by counsel and a magistrate. In KRL v. Estate of Moore, 512 F.3d 1184 (9th Cir.2008) (“KRL II”), we reiterated the Supreme Court’s perspective that qualified immunity protects “all but the plainly incompetent or those who knowingly violate the law.” Id. at 1189 (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). We noted that courts “treat magistrates as more qualified than police officers to make determinations of probable cause,” and that as a general matter an officer cannot be expected to question a magistrate’s probable cause determination. Id. (citing Leon, 468 U.S. at 921, 104 S.Ct. 3405). We stated that “[ojfficers lose their shield of qualified immunity ‘only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.’ ” Id. at 1189-90 (quoting Malley, 475 U.S. at 344-45, 106 S.Ct. 1092).
We then cited Ortiz v. Van Auken, 887 F.2d 1366 (9th Cir.1989), as an example of *1042 where it was reasonable for an officer to rely on an invalid search warrant that “was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” KRL II, 512 F.3d at 1190. In Ortiz, the officers, relying on four anonymous telephone calls apparently from the same individual, sought a warrant to search a residence in which the anonymous informant alleged that explosives were stored. 887 F.2d at 1367-68. The officers prepared a warrant and took it first to a deputy district attorney and then to a judge, both of whom approved the warrant. Id. We held that the officers were entitled to qualified immunity in part because review by the deputy district attorney and the judge weighed in favor of finding that the officers’ belief was not entirely unreasonable. Id. at 1370. We further noted that the warrant was not facially overbroad.[11]
The panel in KRL II then contrasted Ortiz with United States v. Kow, 58 F.3d 423 (9th Cir.1995). In Kow, the warrant “authorized the seizure of virtually every document and computer file at [the business].” Id. at 427. In KRL II, we explained that in Kow, “approval by an attorney and a magistrate did not amount to exceptional circumstances justifying reasonable reliance by the officers, because the lack of probable cause was so obvious that any reasonable officer would conclude that the warrant was facially invalid.”[12] 512 F.3d at 1190. The panel also noted that in United States v. Stubbs, 873 F.2d 210 (9th Cir.1989), we held that because *1043 the warrant contained no reference to criminal activity and merely described broad classes of documents, its “facial invalidity was obvious enough to preclude reasonable reliance.” 512 F.3d at 1190 (citing Stubbs, 873 F.2d at 212). In both Kow and Stubbs the warrants were obviously invalid on their faces.
In KRL II, we were called upon to determine reasonable reliance in a more complex setting involving two warrants.[13] We held that the officers were entitled to qualified immunity on a first warrant based on their reliance on review by a district attorney and the magistrate because it was not “so lacking in indicia of probable cause as to render official belief unreasonable,” implicitly recognizing “that reasonable minds could disagree as to whether probable cause supported the January 11 warrant.”[14] Id. at 1191 (internal citation omitted). We denied the officers qualified immunity on the second warrant because “[e]ven if probable cause existed to believe KRL was ‘permeated with fraud’ since 1995, no reasonable officer could conclude that the discovery of a 1990 ledger and several checks showed that KRL had been primarily engaged in fraudulent activity since 1990.” KRL I, 384 F.3d at 1117. We concluded that “approval by an attorney and a magistrate did not justify reasonable reliance, because the lack of probable cause was so obvious that any reasonable officer reading the warrant would conclude that the warrant was facially invalid. See Kow, 58 F.3d at 428-29.” KRL II, 512 F.3d at 1192.
Our decisions in these cases illustrate that the objectively reasonable standard must be applied on a case-by-case basis. They also suggest that an officer’s reliance on the review by a district attorney and magistrate is reasonable at least until the officer himself seeks to broaden the search warrant well beyond the scope initially approved. Even then, reliance is appropriate unless any reasonable officer would conclude that “the warrant was facially invalid.”
C. Analysis
Our review of Supreme Court and Ninth Circuit cases addressing reasonable reliance reveals certain considerations that transform what might otherwise be an abstract question into a working guide for police officers. Among these considerations are: (1) whether it was reasonable for the officer to apply for the warrant, see Motley, 475 U.S. at 345, 106 S.Ct. 1092; (2) whether there was sufficient probable cause to issue a warrant, see id.; (3) whether the warrant was facially invalid, see Grok, 540 U.S. at 564, 124 S.Ct. 1284; (4) whether the warrant properly identi *1044 fied the limited matters to be searched, see Kow, 58 F.3d at 427; see also Stubbs, 873 F.2d at 212; (5) whether the officer fairly sought review by his or her superiors, counsel and a magistrate, see KRL II, 512 F.3d at 1190; and (6) whether the officer’s misunderstanding was reasonable even where there was no probable cause. See Leon, 468 U.S. at 914, 104 S.Ct. 3405.
All of these factors should be applied in a manner consistent with the Supreme Court’s perspective that qualified immunity should “amply” protect “all but the plainly incompetent or those who knowingly violate the law.” Malley, 475 U.S. at 341, 106 S.Ct. 1092; see also KRL II, 512 F.3d at 1189.
Ill
The application of these factors to the present case compels a determination that the officers reasonably relied on their superiors, the district attorney, and the magistrate to correct the alleged over breadth in the search warrant.
First, as this case comes to us, we accept that it was reasonable for the officers to apply for the warrant and that there was sufficient probable cause for the warrant to issue. In the district court, plaintiffs challenged whether the affidavit established probable cause to believe that Bowen could be found at the residence, but the district court denied that claim. On this interlocutory appeal from the district court’s denial of qualified immunity, we accept the district court’s determination that there was sufficient probable cause to allow the officer to apply for the nighttime search warrant and for the magistrate to issue the warrant.[15]
Second, the warrants were facially valid. They adequately identified the location to be searched, the person to be arrested, and the items to be seized. Regardless of whether there was probable cause to search for firearms and indicia of gang membership, these limited items were properly identified on the face of the warrant.[16]
Third, Officer Messerschmidt scrupulously followed the proper procedures in seeking the arrest and search warrants. The warrant affidavit was reviewed by his sergeant and Messerschmidt consulted a lieutenant. Moreover, the warrants were reviewed by a deputy district attorney before they were presented to, reviewed by, and signed by a magistrate. Messer *1045 schmidt followed the Supreme Court directions in Leon to seek the “detached scrutiny of a neutral magistrate.” 468 U.S. at 913,104 S.Ct. 3405.
Despite accepting that there were reasonable grounds for seeking the warrants, that there was sufficient probable cause to issue the search warrant, that the warrant was facially valid, and that the proper procedures were followed to have the warrants reviewed and approved by a neutral magistrate, the majority nonetheless concludes that the absence of probable cause for two sections of the warrant was so obvious that the officer is not entitled to qualified immunity. Despite our observation, and the Supreme Court’s observation, that “reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause,” KRL II, 512 F.3d at 1189 (quoting Leon, 468 U.S. at 914, 104 S.Ct. 3405), the majority, in essence, considers the officer to have been incompetent or dishonest. Initially, it should be noted that the majority does not suggest that the officer was dishonest. Although the plaintiffs in the district court argued that the officer had failed to present the magistrate with all the relevant facts, the district court rejected those contentions, and there is nothing in the majority’s opinion that resurrects that contention. Rather, the majority’s opinion basically holds that the lack of relationship between the charged crime by Bowen and certain items described in the search warrant was so obvious that the officer may be held personally liable for having entertained a contrary thought. Of course, in light of my perspective on whether the search, might include firearms other than the sawed-off shotgun, I think that the officer’s inclusion of other firearms in the warrant, if not proper, was certainly objectively reasonable.
How could the officer have thought that he could search for indicia of gang membership? We must ask this question based on what the officer knew when he prepared his affidavit. Here, we agree that the officer knew that Bowen had fired a sawed-off shotgun at a person in public, that he was a felon, and that he had ties with a street gang. We also accept that the officer reasonably believed that Bowen was “hiding out” at the house on 120th Street. Why are these “facts” not sufficient to allow the officer initially to include a search for indicia of gang membership in his warrant application? Indeed, the affidavit in support of the warrant offered precisely this line of reasoning.[17]
It appears that ultimately there was no evidence of a link between Bowen’s assault on Kelly with a deadly weapon and his membership in a street gang, but the officer did not know this when he applied for the warrant. Given that Bowen was a felon, a gang member, and had used a sawed-off shotgun, the possession of which might well be illegal, the officer may reasonably have conceived of possible ties between the crime, the weapon and the gang. I do not disagree with the district court’s and the majority’s determination that nevertheless there was insufficient probable cause to support a warrant for indicia of gang membership. Rather, my point is only that it was reasonable for the officer *1046 to think that there might be sufficient probable cause, at least to include the request in the initial application that would then be reviewed by his superiors, a deputy district attorney and a magistrate. See KRL II, 512 F.3d at 1192 (indicating that officers should not be required “to question reasonable assessments of probable cause by government attorneys and magistrates”).
The officer may well have made factual and legal mistakes. See Groh, 540 U.S. at 566-67, 124 S.Ct. 1284 (J. Kennedy, dissenting). He may have thought that the facts that Bowen was a felon, a gang, member, and had committed an assault with a deadly weapon created probable cause to search for indicia for gang membership. He was wrong, but objectively viewed, his mistake was not objectively unreasonable.[18]
One way of ascertaining whether a mistaken belief was reasonable is to compare it to other cases where we have found that an officer was not entitled to qualified immunity. I can find no clear precedent that supports the majority’s conclusion. In Kow, 58 F.3d 423, “the lack of probable cause was so obvious that any reasonable officer would conclude that the warrant was facially invalid.” KRL II, 512 F.3d at 1190. Similarly, the warrant in Stubbs, 873 F.2d 210, was facially invalid. KRL II, 512 F.3d at 1190. Perhaps the most analogous case is KRL II. There, we denied qualified immunity to Officer Hall because we found that “no reasonable officer could conclude that the discovery of a 1990 ledger and several checks showed that KRL had been primarily engaged in fraudulent activity since 1990.” 512 F.3d at 1192 (quoting KRL I, 384 F.3d at 1117). However, our denial of qualified immunity was based on: (1) Hall’s “leadership role in the overall investigation;” (2) our factual determination that “the discovery of a ledger and several checks predating the allegedly fraudulent activity by five years did not provide sufficient probable cause to search for documents dating back to 1990;” and (3) our conclusion that the warrant was obviously facially invalid. KRL II, 512 F.3d at 1192-93. Although Officer Messerschmidt may have been in charge of the investigation of Bowen, he did not have a leadership position similar to that held by Hall in KRL /J.[19] Furthermore, his incorrect factual conclusion was not as farfetched as that in issue in KRL II, and the warrant was not obviously facially invalid.
It might also be noted that in 2003, when Messerschmidt sought the warrant, neither of our opinions in KRL had issued. However, we had decided Ortiz, 887 F.2d 1366. In that case, the officer sought a warrant to search a home for weapons and explosives based on only four telephone calls by the same anonymous person. Id. at 1367. Nonetheless, while finding that *1047 there was no probable cause to support the warrant, we granted the police officer qualified immunity, commenting that an “error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not police officers who made the critical mistake.” Id. at 1369. I would hold that here, as in Ortiz, the officer’s “conduct was ‘sufficient to establish objectively reasonable behavior.’ ” Id. at 1371 (quoting United States v. Freitas, 856 F.2d 1425, 1431 (9th Cir.1988)).
Moreover, the majority’s opinion appears to extend unnecessarily the guiding Supreme Court opinions. In Malley, the Court stated that the question was “whether a reasonably well-trained officer in petitioner’s position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.” 475 U.S. at 345, 106 S.Ct. 1092. In Groh, the Court denied qualified immunity because the warrant “did not describe the items to be seized at all ” and “was so obviously deficient that we must regard the search as ‘warrantless’ within the meaning of our case law.” 540 U.S. at 558, 124 S.Ct. 1284. Here, there is really no question that there was probable cause to issue the warrant and that it was not facially invalid.
I recognize that each provision of a search warrant should be supported by probable cause. See In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 857 (9th Cir.1991) (stating that “probable cause must exist to seize all the items of a particular type described in the warrant”). Nonetheless, we have held in appeals from suppression orders that evidence from valid portions of a warrant may be severed from invalid portions.[20] Similarly, we should recognize that the lack of probable cause for one clause in an otherwise valid warrant does not mean that the officer’s decision to seek the warrant, or even to include that clause in the warrant, was necessarily unreasonable.[21] Instead, at least where the warrant is supported by probable cause and is facially valid, but there is some question as to the sufficiency of evidence to support a section of the warrant, then absent some showing of bad faith on the part of the officer or of a failure to present all the relevant known facts to the magistrate (see Leon, 468 U.S. at 923, 104 S.Ct. 3430), the officer should be allowed to rely on his superiors, the district attorney and the magistrate to correct any over-breadth. Certainly, that should be the case here, as the officer’s affidavit clearly sets forth the basis on which the officer mistakenly thought he could seek a warrant to search for indicia of gang membership.
Moreover, the two provisions of the warrant at issue — those authorizing searches for firearms and for indicia of gang membership — do not appear to have been very important either when the warrant was initially sought or later. First, as noted, the primary purpose of the search was to arrest Bowen. Second, because the dis *1048 trict court upheld the warrant’s provision allowing the search for, and seizure of, indicia of home ownership, and because the majority concedes that the officers were entitled to search for disassembled parts of the sawed-off shotgun, the questioned provisions did not expand the actual scope of the search. Third, as the search only resulted in the seizure of Mrs. Millender’s shotgun and a box of ammunition (and no indicia of gang membership), it does not appear that plaintiffs were really harmed by the search authorized by the questioned provisions of the warrant (as contrasted to the entry into the home and the general search). As Justice Kennedy noted in his dissent in Groh, the Supreme Court has stressed that “ ‘the purpose of encouraging recourse to the warrant procedure’ can be served best by rejecting overly technical standards when courts review warrants.” 540 U.S. at 571, 124 S.Ct. 1284 (quoting Gates, 462 U.S. at 237, 103 S.Ct. 2317). Here, even accepting that there was no probable cause to support the questioned provisions of the warrant, because this defect did not expand the scope of the search nor cause any real harm to the plaintiffs, it should not defeat an otherwise appropriate grant of qualified immunity.
This conclusion is reinforced by the purpose of qualified immunity: to “amply” protect officers other than “the plainly incompetent or those who knowingly violate the law.” KRL II, 512 F.3d at 1189 (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). Here, as noted, there is no suggestion that the officer “knowingly violated the law.” While the majority concludes that the officer should have known that the search warrant was too broad, the length it has to go to make that point suggests that an officer’s failure to so reason cannot be considered plain incompetence. Indeed, the very fact that judges on this en banc panel disagree on this point, in itself, weighs in favor of granting qualified immunity.
IV
Last, but not least, I am concerned that the majority’s parsing of the search warrant will lead to uncertainty and needless litigation. Denying qualified immunity where, as here, the defect in the warrant (a lack of probable cause for two sections of a warrant) did not expand the scope beyond what was constitutional and did not cause any real harm, creates considerable incentive to challenge all but the narrowest of warrants. Even if the overbreadth of a warrant does not produce any evidence and does not result in any real harm, a disgruntled person can overcome a claim of qualified immunity by showing that the officer did not have probable cause to support some part of the warrant. This seems contrary to the purpose of qualified immunity. See Malley, 475 U.S. at 341, 106 S.Ct. 1092.
Moreover, the approach may well interfere with a police officer’s ability to properly protect the public and investigate crimes. Instead of investigating a possible relationship between an assault with a deadly weapon by a convicted gang member and the felon’s street gang, the majority would hold the officer personally liable for not grasping that these facts did not support the issuance of a warrant for anything other than the felon and the particular weapon. This appears to be the type of “high level of generality” that Justice Thomas warned against in his dissent in Groh, 540 U.S. at 578, 124 S.Ct. 1284. Furthermore, this approach may well discourage officers from following up on leads that they would otherwise bring to the attention of their superiors for fear of personal liability if they unwittingly err in their judgment.
*
To recap, although I think that the officer could reasonably have sought to search *1049 for firearms other than the shotgun, I agree with the majority that there was not a sufficient showing of a relationship between the assault and gang membership to provide probable cause for the inclusion of indicia of gang membership in the search warrant. But, applying the factors stressed by the Supreme Court and our court, I cannot conclude that the officer’s inclusion of the provision in the warrant was so objectively unreasonable as to preclude reliance on the approval of his supervisors, the district attorney and the magistrate. It was reasonable for the officer to apply for the warrant, there was probable cause to issue the warrant, the warrant was not facially invalid, the warrant properly identified the limited matters to be seized, and the officer followed the proper procedures for seeking review by his superiors, a district attorney and a magistrate. Moreover, at least as to the questioned provisions, it does not appear that the officer hid any relevant information from his superiors or the magistrate and his affidavit plainly presented the grounds on which he sought indicia of gang membership. Furthermore, I have found no precedent that suggests that an officer may not rely on his superiors and the magistrate when he makes an honest mistake in thinking that there is probable cause to support a provision in an otherwise valid warrant. The majority’s contrary conclusion is of little real benefit to the plaintiffs, and unfairly punishes a line officer for what, at most, was a failure on the part of his superiors, the deputy district attorney and the magistrate, to properly limit the warrant.[22], Here, as in Ortiz, an “error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers who made the critical mistake.” 887 F.2d at 1369. I would hold that the officer’s application for a search warrant which included searching for other firearms and indicia of gang membership was not objectively unreasonable and that the officer is entitled to qualified immunity-

. Although the affidavit in support of the search warrant did not explicitly state that Bowen had a criminal record, this can be inferred from its statement that his membership in the Mona Park Crip gang was based, in part, on information in "the cal-gang data base.” This database is a California-funded, law enforcement-maintained, database of criminal street gangs and their members including criminal histories and activities. See http://ag.ca.gov/calgang. Further, the majority notes first that the officer knew that Bowen had several previous felony convictions and second that Bowen was a "third strike candidate” under California law. Op. at 1022.

. The Supreme Court explained:
we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations.... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity” and "basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding]” that probable cause existed.
547 U.S. at 95, 126 S.Ct. 1494.

.This is not a per se rule as suggested by the majority. See op at 12729. Rather, the specific factors set forth above meet the requirement of probable cause set forth in Gates, 462 U.S. at 238, 103 S.Ct. 2317.

. The majority notes that a sawed-off shotgun can be broken down into separate pieces for easy concealment, but insists that the "deputies’ probable cause extended only to the disassembled pieces of the sawed-off shot-gun with a pistol grip.” Op. at 1027. It also declines to "reach the question whether the deputies could justify the seizure of Mrs. Mil-lender's gun under the plain view doctrine,” because the issue was not raised below and is not a pure question of law. Op. at 1028 n.5. However, once the permissible scope of the search is defined as a search for disassembled parts of the sawed-off shotgun, then an officer is entitled to search anywhere that any firearm might be hidden. In other words, allowing for the search for other weapons does not expand the areas that the police may search beyond those that might also contain part of a disassembled shotgun.

. Indeed, if the shotgun the officers seized had been registered to Bowen, or if it were unregistered and under Bowen's control, it most likely would have been contraband or evidence of a crime.

. The majority objects that the "affidavit does not set forth any evidence indicating that Bowen owned or used any other firearms, that such firearms were contraband or evidence of a crime, or that such firearms were likely to be present at the Millenders' residence.” Op. at 1025. The majority further comments that “nothing in the warrant or the affidavit provides any basis for concluding that there was probable cause to search for or seize the generic class of firearms.” Op. at 1025. This perspective fails to appreciate that Bowen was a felon, demonstrably dangerous, and a gang member who was wanted for shooting at his ex-girl friend in public. These facts alone are sufficient to justify the search for firearms during a nighttime search (or at least a reasonable officer could think so). The cases cited by the majority, Grubbs, 547 U.S. at 95, 126 S.Ct. 1494, and In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 857 (9th Cir. 1991), are not to the contrary. In Grubbs, the Supreme Court addressed the anticipatory nature of warrants 5and commented that "where the police seek permission to search a house for an item they believe is already located there, the magistrate’s determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed.” 547 U.S. at 95, 126 S.Ct. 1494. The cited section of In re Grand Jury Subpoenas, 926 F.2d at 857, concerned the particularity and breadth of the warrant. Neither case dealt with items such as firearms which are inherently dangerous and may not be possessed by certain felons. Here, the officers had a reasonable suspicion that Bowen would have firearms and that the firearms would be contraband, if not evidence of crimes.

.The relationship between gang-related indicia and the offense for which Bowen was sought is admittedly more attenuated. Accordingly, I do not disagree with the majority's determination that this provision of the warrant was overbroad. However, as explained later in this dissent, when viewed in context, the line officers’ inclusion of the provision in the warrant was reasonable. ,

. Justice Powell was right when joined by then-Justice Rehnquist, he issued a concurring and dissenting opinion criticizing the majority for giving "little evidentiary weight to the finding of probable cause by a magistrate or judicial officer.” Id. at 350, 106 S.Ct. 1092. Justice Powell urged:
The police, where they have reason to believe probable cause exists, should be encouraged to submit affidavits to judicial officers. I therefore believe that in a suit such as this, the Court should expressly hold that the decision by the magistrate is entitled to substantial evidentiary weight. A more restrictive standard will discourage police officers from seeking warrants out of fear of litigation and possible personal liability. The specter of personal liability for a mistake in judgment may cause a prudent police officer to close his eyes to facts that should at least be brought to the attention of the judicial officer authorized to make the decision whether a warrant should issue.
Id. at 353-54, 106 S.Ct. 1092 (footnote omitted).

. The Court noted that "[i]n the portion of the form that called for a description of the 'person or property' to be seized, petitioner typed a description of respondents' two-story blue house rather than the alleged stockpile of firearms.” 540 U.S. at 554, 124 S.Ct. 1284.

. Justice Thomas explained:
The qualified immunity inquiry rests on "the'objective legal reasonableness’ of the action, Harlow [v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 ... (1982)], assessed in light of the legal rules that were 'clearly established' at the time it was taken.” Anderson v. Creighton, 483 U.S. at 639, 107 S.Ct. 3034 ... The outcome of this inquiry "depends substantially upon the level of generality at which the relevant 'legal rule’ is ... identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause ... violates a clearly established right.” Ibid. To apply the standard at such a high level of generality would allow plaintiffs "to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.” Ibid. The Court in Anderson criticized the Court of Appeals for considering the qualified immunity question only in terms of the petitioner's "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances.” Id. at 640, 107 S.Ct. 3034.
540 U.S. at 578, 124 S.Ct. 1284.

. We explained:
Ortiz complains that the warrant lacked probable cause — the veiy situation confronted by the Supreme Court in Leon. ... 468 U.S. at 921, 104 S.Ct. 3405.... In explaining the parameters of the good faith exception, Leon distinguished between warrants that are facially invalid for lack of particularity and those so lacking in indicia of probable cause as to render an officer's belief in its existence "entirely unreasonable.” Id. at 923, 104 S.Ct. 3405. Determining whether certain facts constitute probable cause differs from ascertaining whether a warrant is so facially overbroad that it precludes reasonable reliance. Leon teaches that inadequate probable cause does not necessarily render a warrant facially invalid nor prevent reasonable belief in the existence of probable cause. The existence of probable cause may be difficult to determine. Recognizing this, Leon and its progeny encourage officers to consult legal officers and rely on their opinions. Once this is accomplished, " 'there is literally nothing more the policeman can do in seeking to comply with the law.’ " Id. at 921, 104 S.Ct. 3405, quoting Stone v. Powell, 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067, ... (1976) (Burger, C.J., concurring).
887 F.2d at 1370-71.

. Kow was an appeal from an order suppressing evidence. 58 F.3d at 428. It contains the following comment on severability relevant to our case:
The government maintains that even if some categories of the warrant were over-broad, certain sections of the warrant were valid and evidence seized pursuant to these sections should not be suppressed. See United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.... 1984). However, “severance is not always possible.” Cardwell, 680 F.2d at 78. In particular, "[i]f no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required. Otherwise the abuses of a general search would not be prevented.” Id.
Here, none of the fourteen categories of seizable documents was limited by reference to any alleged criminal activity. Only Category G, authorizing seizure of tax returns since 1983, was limited as to time. Although Category M, authorizing the seizure of all documents related to HK Video's dealings with other businesses sublicensed by HK T.V., arguably was not overbroad, “severance is not available when the valid portion of the warrant is 'a relatively insignificant part' of an otherwise invalid search.” In re Grand Jury Subpoenas, 926 F.2d at 858 (quoting Spilotro, 800 F.2d at 967).

. KRL II, 512 F.3d 1184, is our second opinion in the case. We previously addressed issues of absolute and qualified immunity arising out of the underlying warrants in KRL v. Moore, 384 F.3d 1105 (9th Cir.2004) ("KRL I"). In this opinion we explained that in April 1998, KRL had purchased a defunct gasoline station and had an underground gasoline tank removed. Id. at 1108. The district attorney commenced an investigation into possible environmental contamination and procured a first warrant providing for the seizure of a broad range of documents created since January 1, 1995. Id. at 1108-09. The officers undertook a search pursuant to the warrant, but after finding evidence not within the scope of the warrant, they returned to the court and sought a second warrant, authorizing seizure of documents dating back to 1990. Id. at 1109.

. We explained that the first warrant " 'had a more reasonable temporal limit’ (limiting the search to documents dating back to 1995), 'it alleged fraudulent activity and tax evasion dating to 1997,' ‘it alleged hazardous water violations in 1995 and 1996,' and 'it alleged that Womack withdrew funds from KRL for personal expenses and illegal activities.’ ” 512 F.3d at 1191 (quoting KRL I, 384 F.3d at 1116).

. Indeed, the decision to conduct a nighttime search of Mrs. Millender's home may be the most disturbing decision in this case, as Mrs. Millender appears to have had no connection with the underlying crime. Judge Fernandez, a member of the initial three-judge panel, recognized this in his concurring opinion, noting: "[wjhen I read and reread the warrant and the affidavit that supports it, I come away with the feeling that there is extremely little support for the search of a third person's home for all firearms and ammunition.” Millender v. County of Los Angeles, 564 F.3d 1143, 1151 (9th Cir.2009). Mrs. Millender’s connection to Bowen appears to be that at one time she had been Bowen’s foster mother. However, the district court held that the decision to conduct a nighttime search of the residence was reasonable, and accordingly, we view the warrant in that light.

. The majority's concern with the "breadth” of the warrant is really a concern with whether there was probable cause to support the questioned provisions of the warrant. See Op. 1024, 1027-28. In the case relied upon by the majority, United States v. SDI Future Health, 568 F.3d 684 (9th Cir.2009), we explained that for a warrant not to be "over-broad” there must be probable cause to seize the particular thing named in the warrant, and that this means "a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances.” Id. at 702-03 (quoting United States v. Diaz, 491 F.3d 1074, 1078 (9th Cir.2007)). Probable cause is discussed later in this dissent.

. The officer set forth his specialized training in the field of gang-related crimes, and his participation in hundreds of interviews with individuals who had been sentenced or were about to be sentenced. He stated that these interviews provided him with "information pertaining to the manners in which gang-related assaults are committed, the motives for such assaults, and the concealment of weapon(s) used in such assaults." He further stated that his investigation had shown that Bowen had gang ties to the Mona Park Crip gang, and asserted that this fact in connection with the nature of the underlying crime justified night service of the warrant.

. Contrary to the majority’s assertion, see Op. at 1033-35, this conclusion is not based on the dissenting opinion in Malley and Groh, but on the application of the standard set forth in those opinions. The determination of whether a "well trained officer would have known that the search was illegal despite the magistrate’s authorization” {Leon, 468 U.S. at 922 n. 23, 104 S.Ct. 3405), requires an evaluation of the particular facts of the case. In Malley, the Court did not determine whether "petitioner's conduct ... was in fact objectively reasonable.” 475 U.S. at 345 n. 8, 106 S.Ct. 1092. In Groh, the Court referred to this as "the particularity requirement.” 540 U.S. at 563, 124 S.Ct. 1284. It is in the application of the "particularity requirement” to a specific fact situation that the dissents in Malley and Groh are relevant when evaluating whether the officer "should not have applied for the warrant.” Malley, 475 U.S. at 345, 106 S.Ct. 1092.

. Unlike Officer Hall who executed the search at issue in KRL II, 384 F.3d at 1109, Officer Messerschmidt was assigned to traffic control on the street during the search of the Millender residence.

. In SDI Future Health, we “endorsed a doctrine of severance,” noting that we had "previously allowed severance when a warrant lacked particularity because of some unduly broad language in the warrant.” 568 F.3d at 707 (internal citation omitted). We commented that we do not allow severance where “the valid portion of the warrant is ‘a relatively insignificant part’ of an otherwise invalid search.” Id. (quoting Kow, 58 F.3d at 428). Here, the focus of the search was for Bowen and his sawed-off shotgun. It seems doubtful that had he or the shotgun been found, that evidence would have been suppressed because of the overbreadth of the warrant.

. Of course, the operating premise remains that there was no probable cause to support the particular section of the warrant. What is at issue is only the second prong for qualified immunity, whether the officer, in good faith, could have relied on the magistrate.

. There is some irony in judges, who enjoy judicial immunity, holding that a line police officer may be personally liable for the breadth of a warrant when the system as set forth by the Supreme Court depends on the "detached scrutiny of a neutral magistrate” {Leon, 468 U.S. at 913, 104 S.Ct. 3405), and the magistrate failed to properly perform his or her duty. The officer’s mistake was clear from his affidavit. He thought that the facts that Bowen had committed an assault with a deadly weapon, and was a felon and a gang member were sufficient to allow for the search of indicia of gang membership. There is no suggestion that the officer hid anything from his superiors, the district attorney, or the magistrate. However, as the magistrate has judicial immunity, blame cascades down on the line officer. As Gilbert & Sullivan noted in The Pirates of Penzance: "a policeman’s lot is not a happy one.”